FRANKLIN C. CORNELL, Administrator, &c., agt. UTICA, ITHACA AND ELMIRA RAILROAD COMPANY, &c.

*Preliminary injunction against a railroad, forbidding the issuing of bonds or the payment of principal or interest on same, or the issuing of stock certificates — Under what circumstances should be continued.*

The plaintiff's intestate, E. C., was the contractor for the building of a portion of the Utica, Ithaca and Elmira Railroad. He was paid in the bonds and stock of said road upon which, as collateral, he had borrowed large sums of money, and by reason of his large indebtedness an arrangement was made whereby one G., in the interests of the contractor and owners of the road, went to England and secured the sale of the bonds of the road, the proceeds being first applied to the payment of E. C.'s indebtedness secured by said bonds. Afterwards certain other payments were to be paid out of the proceeds of bonds sold, including a considerable amount to E. C. H. S. K. & Co., of London, were the bankers through whom the sales of bonds in England were made. Afterwards the interest upon these bond not being paid, the mortgage given to secure the same was foreclosed. At the time of the sale H. S. K. & Co., or their survivor, owned or controlled, as if owner, some 946 bonds of $1,000 each; the plaintiff owned or claimed to own some 341 bonds of $1,000 each, and the remainder of an issue of $1,365,000 was held and owned by various persons in small amounts. The plaintiff's title to a portion of the bonds claimed by him is contested by some of the defendants. If any of the bonds claimed by plaintiff have been

Cornell agt. Utica, Ithaca and Elmira Railroad Company.

sold, the plaintiff claims the proceeds.   The sale of the road was made April 30, 1878, for the sum of $50,000, and was bid in by an agent of H. S. K. & Co., the plaintiff not bidding thereon.   The plaintiff alleges that prior to said sale it was agreed between K. & Co. and plaintiff that said railroad should be bid in for the joint benefit of plaintiff and K. & Co., in proportion to their respective rights as owners and holders of said bonds; that as soon as the title should be perfected a new company should be organized, which should execute a first mortgage upon said road and issue bonds of the new company, to plaintiff and K. & Co., to the same extent and amount for which they were respectively owners and holders of bonds in the old road, and that in pursuance of such agreement the plaintiff abstained from bidding on said property, and K. & Co. bought the same.   Afterwards a new company was formed by the name of the Utica, Ithaca and Elmira Railway Co., a defendant herein, and the title to the property was transferred by the purchaser to it.   As the title and ownership of plaintiff to the number of shares claimed by him was controverted by some of the defendants, this action was brought in June, 1878, among other things, to have determined and adjudged the rights and interests of the several parties to this action, and to have enforced specifically by the Utica, Ithaca and Elmira Railway Co., the contract or agreement under and by virtue of which H. S. K. & Co., became the real purchasers of said railroad property upon the foreclosure sale.   In November, 1880, an injunction was issued forbidding the Utica, Ithaca and Elmira Railway Co., from issuing bonds and securing their payment by a first mortgage upon its property in violation of plaintiff's equitable rights, it being alleged that such intention existed.   In December, 1880, upon allegation of information that a mortgage for $600,000 had been put upon said property by the railway company, and that the bonds were ready to issue or had been taken by H. S. K. to England to be issued, a further injunction was issued restraining the defendants from paying any part of the principal or interest of such bonds until the further order of this court.   In February, 1881, upon allegation that George Rice, the president of said railway company, was about to issue to K. & Co., stock certificates to a large amount in said railway company, a third injunction was issued enjoining such issue of stock by the company to K. & Co.   Upon application to continue these injunctions pending the litigation:

*Held, first,* that as the only issue of fact of importance in the case relates to the alleged contract under which the defendant bid in the railroad upon the foreclosure, and that fact remains in doubt, this court ought not, if it can fairly be avoided, to pass upon the merits in such a way as will, in effect, destroy the plaintiff's cause of action and strip him of relief to which a trial upon the merits might show him entitled.   The plaintiff might be remediless without the aid of injunctions.   The

Cornell agt. Utica, Ithaca and Elmira Railroad Company.

defendants are protected by adequate security for any loss they may sustain. Reference should be had to the nature and extent of the injury— to the consequences which may follow the granting or withholding the injunction. It is usually sufficient to establish a *prima facie* case entitling plaintiff to a specific performance of a contract. The result of the final hearing need not be shown to be necessarily in his favor.

*Second.* The statute of frauds does not apply to such a contract as is alleged in this case. Plaintiff and K. had a joint interest and *quasi* ownership of the railroad company. Their contracts for the disposition of their property carried into effect by virtue thereof are valid and effectual. The plaintiff has parted with his interest in and claim upon the promise of K. to repay him out of the proceeds of property that went into K.'s hands by virtue of the contract. It was a permission and agreement by plaintiff that the defendant K. might take possession and title to the property discharged from plaintiff's lien, provided and upon the condition that defendant should restore the lien to plaintiff after his purchase. Such a transaction is not within the statute of frauds.

*Third.* There is nothing in the transaction that should render it void out of consideration for public policy. It was no combination to suppress bidding at a judicial sale. The agreement by one that he will buy for the benefit of both and the absence from bidding of the other by reason thereof would not present a question of public policy.

*Fourth.* If the property in K.'s hands was charged with an equitable lien in favor of plaintiff, it is equally so in the hands of the railway company. To all intents the two, K. and the railway company, are one and the same, except, perhaps, to the extent that the purchasers in good faith of the bonds and stock of the railway company may have acquired rights prior to but in fraud of plaintiff's lien.

*Fifth.* A *lis pendens* is not a full and complete protection to the rights of the plaintiff. The *lis pendens* would not protect plaintiff's rights in or to the personal property which, by the $600,000 mortgage, has been included as a part of the mortgaged property.

*Sixth.* Where the real estate and road-bed extend through several counties, and there is no proof that the complaint in the action was filed in any one of said counties, a notice of *lis pendens*, if filed, would be inoperative

*Tompkins Special Term, March,* 1881.

MOTION for continuance of preliminary injunction, *pendente lite.*

*Irving G. Vann,* for the motion.

*Samuel Hand* and *Charles H. Tweed,* opposed.

BOARDMAN, *J.* — Ezra Cornell, plaintiff's intestate, was the contractor for the building of a portion of the Utica, Ithaca and Elmira railroad. He was paid in the bonds and stock of said road, but as these were not available for sale in the open market he had borrowed large sums of money upon them as collateral. His efforts as contractor were embarrassed for want of money and by reason of his large indebtedness. An arrangement was made whereby one Greenough, in the interests of the contractor and owners of the road, went to England and secured the sale of the bonds of the road, the proceeds being first applied to the payment of Mr. Cornell's indebtedness secured by said bonds. Afterwards certain other payments were to be paid out of the proceeds of bonds sold, including a considerable amount to Cornell. Henry S. King & Co., of London, were the bankers through whom the sales of bonds in England were made. Afterwards the interest upon these bonds not being paid, the mortgage given to secure the same was foreclosed. At the time of the sale said H. S. King & Co., or their survivor, owned or controlled, as if owners, some 946 bonds of $1,000 each; the plaintiff owned, or claimed to own, some 341 bonds of $1,000 each, and the remainder of an issue of $1,365,000 was held and owned by various persons in small amounts. The title of the plaintiff to a portion of the bonds claimed by him is contested by some of the defendants in this action. If any of the bonds claimed by plaintiff have been sold, then plaintiff claims the proceeds thereof as belonging to him.

The sale of the road was made April 30, 1878, for the sum of $50,000, and was bid in by an agent of said H. S. King & Co., the plaintiff not bidding thereon.

The plaintiff alleges that prior to said sale it was agreed between King & Co. and plaintiff that said railroad should be bid in for the joint benefit of plaintiff and said King & Co., in proportion to their respective rights as owners and holders of said bonds; that as soon as the title should be perfected a new company should be organized, which should

execute a first mortgage upon said road and issue bonds of the new company to plaintiff and said King & Co., to the same extent and amount for which they were respectively owners and holders of bonds in the old road, and that in pursuance of such agreement the plaintiff abstained from bidding on said property, and King & Co. bought the same.

Afterwards a new company was formed by the name of the Utica, Ithaca and Elmira Railway Company, a defendant herein, and the title to the property transferred by the purchaser to it.

As the title and ownership of plaintiff to the number of shares claimed by him was controverted by some of the defendants, this action was brought in June, 1878, among other things, to have determined and adjudged the rights and interests of the several parties to this action, and to have enforced specifically by the Utica, Ithaca and Elmira Railway Company the contract or agreement, under and by virtue of which H. S. King & Co. became the real purchasers of said railroad property upon the foreclosure sale April 30, 1878. The plaintiff claimed to have an equitable lien upon said railway property for the amount of his debt by virtue of said contract. A demurrer to the complaint was interposed by King, which was overruled at special and general terms, and an amended answer has, on the day when this motion is heard, been served.

In November, 1880, an injunction was issued forbidding the Utica, Ithaca and Elmira Railway Company from issuing bonds and securing their payment by a first mortgage upon its property in violation of plaintiff's equitable rights, it being alleged that such intention existed.

In December, 1880, upon allegation of information that a mortgage for $600,000 had been put upon said property by the railway company, and that the bonds were ready to issue, or had been taken by H. S. King to England to be issued, a further injunction was issued restraining the defendants from paying any part of the principal or interest of such bonds until the further order of this court.

Cornell agt. Utica, Ithaca and Elmira Railroad Company.

In February, 1881, upon allegation that George Rice, the president of said railway company, was about to issue to King & Co., stock certificates to a large amount in said railway company, a third injunction was issued enjoining such issue of stock by the company to King & Co.

The hearing upon the application to continue these injunctions pending the litigation, has, by consent, been deferred from time to time to this day.

The plaintiff claims to hold an equitable lien upon the property of the railway company, which should be enforced and upheld in preference to stockholders or creditors of the new company, and that the various acts done or threatened by said company are calculated to destroy his rights or embarrass his remedy and imperil his security by the creation of new and hostile interests.

The defendant King denies that any agreement, as is claimed by plaintiff, was made with plaintiff before said foreclosure sale, and denies that the plaintiff had any interest in the property after the sale, either legal or equitable.

The defendant also insists that, if any agreement was made, it was void in law and within the statute of frauds, and was terminated by a formal notice that the sale would convey entire interest to the purchaser absolutely free from any equities or liens whatsoever, and that the plaintiff and others must protect their own interests upon such sale.

The defendant alleges that whatever rights the plaintiff has, if any, are protected by his notice of the pendency of the action filed in this case; that two provisional remedies will not be granted by the courts at the same time, and the danger of injury to plaintiff from defendant's acts could not so exist as to justify these injunctions while the *lis pendens* gave constructive notice to all of plaintiff's rights. It is also claimed by defendants that the mortgage for $600,000 was put upon the property of the railway company and the bonds issued thereon to *bona fide* purchasers prior to the issuing of the first injunction, which injunction is therefore futile and worth-

less, and that the third injunction is too broad in restraining King & Co. from disposing of any bonds in the possession or under the control of them or either of them, thus covering bonds in their possession to which they have no title, and in which they claim no interest.

It is agreed by counsel for the plaintiff that the third injunction may be modified so as to affect only such bonds as the defendant King owns or has title to, in whole or in part, and it is so modified.

The only issue of fact of importance in this case relates to the alleged contract under which the defendant bid in the railroad upon the foreclosure. If the plaintiff's witnesses tell the truth, the title taken on such sale was for the joint benefit of plaintiff and defendant King, according to their several interests. If the defendant's witnesses tell the truth, the plaintiff has not the shadow of a cause of action against King or the railway company, and his complaint should be dismissed.

What the fact is remains in doubt, and this court ought not, if it can fairly be avoided, to pass upon the merits in such a way as will, in effect, destroy the plaintiff's cause of action, and strip him of the relief to which a trial upon the merits might show him entitled. The plaintiff might be remediless without the aid of injunctions. The defendants are protected by adequate security for any loss they may sustain (*Rector, &c.*, agt. *Keech*, 5 *Bosw.*, 691; *Speer* agt. *Cutter*, 5 *Barb.*, 486). Reference should be had to the nature and extent of the injury — to the consequences which may follow the granting or withholding the injunction (*High on Inj.*, sec. 1136; *Heath* agt. *Pres't, &c.*, 7 *Abb.* [*N. S.*], 251; *Bruce* agt. *D. and H. Canal Co.*, 19 *Barb.*, 371; *Gallatin* agt. *Oriental Bank*, 16 *How.*, 253). It is usually sufficient to establish a *prima facie* case entitling plaintiff to a specific performance of a contract. The result of the final hearing need not be shown to be necessarily in his favor (2 *High on Inj.*, sec. 1120; secs. 1121, 1122; 2 *Wait's Prac.*, 3, 6, 8, 11, 12).

Cornell agt. Utica, Ithaca and Elmira Railroad Company.

For these reasons I shall not hold that the plaintiff has no cause of action and is not, therefore, entitled to any protection. It is safer and wiser to assume, for the purposes of these motions, that the questions of fact *may* be determined upon trial in plaintiff's favor. In that event he might be robbed of his relief if this court, on an interlocutory order, should dissolve the injunctions by which his remedy is secured.

It is proper also to consider the facts that the defendant King, who is and has been the principal and responsible actor in this transaction, is a resident of England ; that the railway company as at present organized is not possessed of great value, as defendant charges, of not sufficient value to satisfy the claims of plaintiff and defendant King in cash ; that $600,000 have already been issued by the railway company in bonds secured by a mortgage upon the road, as defendant asserts, to *bona fide* holders who will doubtless claim priority over the plaintiff, though plaintiff may succeed ; that said King claims now the stock of said road to nearly two millions of dollars has been issued and disposed of by him to *bona fide* purchasers ; that each *bona fide* purchaser of the stock, bonds or property of said company may reasonably claim that they purchased in ignorance of plaintiff's alleged claim and lien, and that much of the property of said company may be transferred without the knowledge and against the alleged rights of the plaintiff, who could, with extreme difficulty, follow the property or protect his liens thereon or against such sale or transfer thereof. Again this action was begun in June, 1878. After the delay incident to a demurrer to the complaint an amended answer is served, in March, 1881, by the defendants, and yet the only essential issue between plaintiff and the railway company and King is the alleged contract under which King bid in the old road April 30, 1878. The evidence touching the existence of such contract is apparently confined to five or six persons at most, and could have been tried and disposed of at any time within the last two and one-half years if the defendants had desired to do so. In the meantime, and in defiance of

plaintiff's alleged rights, they have, as they allege, mortgaged the road and issued its stock to purchasers in good faith, who will doubtless claim priority over any equitable lien of plaintiff upon the same property.

I have said the essential issue relates to the alleged contract on the foreclosure sale. That, I take it, is true. For if such contract is not found to have been made, that will be the end of plaintiff's case. If it shall be found to have been made the defendant can, if the law so adjudge, easily comply by the issue of the requisite bonds and the delivery of the same into court so as to be absolved from all further litigation or embarrassment arising therefrom. One-half the time, labor and expense applied to the litigation by demurrer, and to the effort to get rid of these injunctions, would have disposed of every question of fact at issue between plaintiff and defendants, King and the railway company, and left only the entry of such a judgment upon the merits, as the law and the facts so determined should justify. It is not well to try a case by indirection or upon affidavits when as simple a mode lies in a trial upon the merits.

We shall assume then the contract as alleged by plaintiff for the purposes of this application, but without passing upon the merits or deciding anything as to the credibility of the witnesses whose affidavits have been read. That question is sent to the trial court, free from any expression of conviction by this court, which can influence the judgment or affect the decision of the judge who shall try the case on its merits.

It is urged, however, that a contract, such as is alleged, would be void, first, as in violation of the statute of frauds, and, second, as against public policy.

The statute of frauds does not apply to such a case as the present. Plaintiff and King had a joint interest and *quasi* ownership of the railroad company. Their contracts for the disposition of their property, carried into effect by virtue thereof, are valid and effectual (*Traphagan* agt. *Burt*, 67 *N. Y.*, 30; *Ryan* agt. *Dox*, 34 *N. Y.*, 307). The case is very

Cornell agt. Utica, Ithaca and Elmira Railroad Company.

different from *Levy* agt. *Bush* (45 *id.*, 589), where the plaintiff had parted with nothing and done nothing to entitle him to enforce the contract. Here the plaintiff has parted with his interest in and claim upon the promise of King to repay him out of the proceeds of property that went into King's hands by virtue of the contract. It was a permission and agreement by plaintiff that the defendant King might take possession and title to the property discharged from plaintiff's lien, provided and upon the condition that defendant should restore the lien to plaintiff after his purchase. Such a transaction is not within the statute of frauds.

Nor is there anything in the transaction that should render it void out of consideration for public policy. The interests of these parties in the property to be sold were not diverse and hostile. The property was being sold to pay their debts. Their interests were, therefore, in harmony, and they were equally interested in securing their debts by and through the sale. It was, therefore, no combination to suppress bidding at a judicial sale. Their relations were very like those of two partners under similar circumstances purchasing at a foreclosure. The agreement by one that he will buy for the benefit of both, and the abstinence from bidding of the other, by reason thereof, would not present a question of public policy (*Barne* agt. *Drew*, 4 *Den.*, 287 ; *Ingraham* agt. *Baldwin*, 12 *Barb.*, 9, 21).

It is further urged by the defendants that such a contract as is alleged by plaintiff could not be legally carried into effect by the new railway company, because it would thus execute a mortgage for an amount in excess of its entire value and without receiving therefrom a dollar of consideration. This, it is insisted, no railroad company, organized under the laws of this state, has power to do.

Conceding these propositions true, they do not apply to the case under consideration. The railway company acquired the title that King purchased at the foreclosure, subject to any equitable rights of plaintiff. What has the railway company

paid King or plaintiff for the road franchises, &c. ? The answer must be nothing, unless the $600,000 in bonds and $2,000,000 in stock were issued to King to pay for the value of his interest in the property at the time of the foreclosure. If it was so paid, then plaintiff claims he also, under his con-tract, was entitled to be paid in like manner and in proportion that his interest bore to King's. It is difficult to see how the railway company could pay King for his interest and could not pay plaintiff for his equitable interest in the same property in King's hands (2 *Wait's Pr.*, 47 ; *Cranston* agt. *Plumb*, 54 *Barb.*, 59).

If, on the contrary, these bonds and stock certificates have been issued to actual purchasers, and have been paid for in cash to the company, then it has paid nothing for all the property sold under the foreclosure and transferred to it by King or his order. Upon what principle can this railway company claim to hold and own a large and valuable property upon which plaintiff has or claims an equitable lien, without having paid one dollar therefor ? The lien that was to be given by the railway company to plaintiff and King by virtue of the contract, was the consideration to be paid for the road franchises, &c. It has either paid nothing or it has paid only to King, ignoring and refusing to pay plaintiff's claim. Cer-tainly the statute does not create the right in newly organized railroads to refuse to pay the purchase-price. There is, there can be no pretense, that the railway company is not equally responsible with King for the performance of any contract made with plaintiff by King as to the foreclosure. If the property in King's hands was charged with an equitable lien in favor of plaintiff, it is equally so in the hands of the rail-way company. To all legal intents, the two, King and the railway company, are one and the same, except perhaps to the extent that the purchasers in good faith of the bonds and stock of the railway company may have acquired rights prior to, but in fraud of plaintiff's lien (*Blatchford* agt. *Ross*, 54 *Barb.*, 42 ; 2 *Wait's Pr.*, 47).

Cornell agt. Utica, Ithaca and Elmira Railroad Company.

There is a further point raised by the defense, to wit, that an injunction will not be granted, or if granted will be set aside when a *lis pendens* already filed secures to the plaintiff all that the injunction has, or is intended to secure to him.

The plaintiff replies to such claim that there is no proof of the filing of the notice in any county besides Tompkins, while the real estate and road-bed extend through the counties of Chemung, Tioga and Cortland, as well as through Tompkins. There is no proof that the complaint in this action was filed in any one of said counties, not even in Tompkins. And hence a notice, if filed, would be inoperative (*Burrough* agt. *Reiger,* 12 *How.*, 171; 48 *N. Y.*, 585; *Old Code, sec.* 132). For these reasons it cannot be safely assumed that the plaintiff's rights are protected by the filing of a notice of the pendency of the action in the counties through which the road runs.

But we will disregard these answers of the plaintiff to the objection of the defendants, which answers may be more technical than real, and put our decision upon the broader ground that a *lis pendens* is not a full and complete protection to the rights of the plaintiff as claimed by him. His original mortgage not only covered the road-bed, but the personal property belonging to the old railroad company, and such real and personal property was sold and bid in by King on the foreclosure. All of the property so bid in was charged with any equities of the plaintiff under his contract with King. The *lis pendens* cannot protect plaintiff's rights in or to the personal property which, by the $600,000 mortgage has been included as a part of the mortgaged property (*Mills* agt. *Bliss*, 55 *N. Y.*, 141). In the respect just indicated, the present case is distinguished from those cited by counsel for the defense. Besides the stock certificates are not covered by the notice, and it may be a question whether persons acquiring certificates of stock in a corporation and paying value therefor without notice of plaintiff's equities could be compelled to submit to them.

It is not perhaps necessary to question the authority of *Osborne* agt. *Taylor* (5 *Paige*, 515), and others founded thereon cited by the defendant. If the *lis pendens* protects the party filing it to the same extent and in as full a manner as an injunction would, it must be conceded that an injunction would be useless. Under such facts an application for an injunction would be without merit.

But in the present case we have rights alleged to be founded upon latent equities against property real and personal in the hands of King. King transfers such property to a railway corporation, concealing plaintiff's equities and ignoring his rights. As the apparent owner of the property that is transferred to the corporation, he becomes the apparent owner of the stock of the railway company, and controls its actions. As such apparent owner, the stock is issued to him by the officers of the road. At his dictation, and because he appears to have supreme authority and ownership, a mortgage for $600,000 is put upon the road, its iron ties, equipment and franchises, and the bonds issued thereon to him and disposed of by him at his pleasure. The stock has been, or may be, in like manner sold by King and transferred to others. Each day may add to the complication and difficulties in the way of securing an adjustment of plaintiff's rights, if he shall finally be adjudged to have any. Under such a state of facts it would seem to be eminently just and proper for a court of equity to command a defendant to desist from disposing of the property alleged to be subject to an equitable lien in favor of the plaintiff until the rights of the plaintiff can be ascertained, and if determined in his favor, that the property may be found to satisfy his demands. The public are entitled to protection against the wrongful acts of persons in possession of corporate property whereby they may lose their money paid for the purchase, or may be involved in complicated and fruitless litigation.

Whether or not the plaintiff was bound to tender a proportion of the expenses of the foreclosure sale, and of his bonds

and demand from King and the railway company, a performance of their contract does not seem to me a proper subject for consideration upon this motion. It will be best considered on the trial of the action.

For the reasons assigned, I think the injunctions heretofore granted should be continued *pendente lite*, except that the injunction enjoining the said King and others from selling, &c., any bonds, &c., of the railway company in the possession, &c., of the said King, should be so modified as to refer to, and include only such bonds, &c., of the railway company defendant as were or are owned in whole or in part by the defendant King, his agents, &c.

The form of the order if necessary to be settled by me.