# Pennsylvania Railroad Company, and Northern Central Railway Company, Appts., *v.* Commonwealth of Pennsylvania.

A railroad company negotiated through another railroad company for the purchase of a controlling interest in the stock of a parallel or competing line, the legal title of the stock to be held by the other railroad, but the consideration coming from the competing company. A preliminary injunction to restrain the execution of the contract was granted, and a decree entered continuing the injunction until final hearing was affirmed on appeal.

(Decided October 4, 1886.)

Appeal by defendants from a decree of the Common Pleas of Dauphin County continuing a preliminary injunction. Affirmed.

Reported below, 1 Pa. Co. Ct. 223.

The facts are stated in the opinion of the court below, by Mc-Pherson, J.:

"The motion before us is to continue the preliminary injunction heretofore granted. The opposing views of the parties have been argued with such candor and ability as befit their great importance, and it only remains to state the conclusions of the court. They are these:

"First. That the injunction must be continued until final hearing, so far as the Pennsylvania Railroad Company and the Northern Central Railway Company are concerned; and

"Second. That the evidence before us does not require its continuance against the other defendants.

"The jurisdiction of the court to interfere by injunction was earnestly denied, and it was insisted that a writ of quo warranto was the proper remedy. This position, however, does not seem to be sound, in view of the express language of § 13 of the act of 1836 (P. L. 789).

Cited in Gummere v. Lehigh Valley R. Co. 3 Maxwell, 241, 261.

"That section, together with the act of 1857 (P. L. 39), gives to the courts of common pleas the power and jurisdiction of courts of chancery so far as relates, *inter alia,* 'to the prevention or restraint of the commission or continuance of acts contrary to law and prejudicial to the interests of the community or the rights of individuals.' From this provision it seems plain, and not to need discussion, that if the acts being done or proposed to be done are or would be in violation of the Constitution and prejudicial to the interests of the community, we have express authority to restrain their commission or continuance. Whether or not the remedy by quo warranto is also proper, we need not now consider.

"A considerable amount of testimony was taken, but there is substantial agreement as to all points now material. We find the important facts to be as follows:

"1. The Pennsylvania Railroad Company is a railroad corporation of this commonwealth, and leases, operates, and controls the Tyrone & Clearfield Railroad and the Bald Eagle Valley Railroad, with their branches and connections. These leased roads reach portions of the Clearfield coal region in the counties of Clearfield and Centre.

"2. The Beech Creek, Clearfield, & Southwestern Railroad Company is a railroad corporation of this commonwealth, owning and operating a practically completed line of railroad, which also reaches portions of the Clearfield coal region.

"3. The leased roads alone above mentioned are direct and substantial competitors with the Beech Creek Road for certain freight and passenger traffic in the said region.

"4. The Northern Central Railway Company is a railroad corporation, chartered in part by this commonwealth, owning or leasing and operating a line of railroad which, so far as we are now informed, does not of itself compete with the railroad of the Beech Creek Company. It is not leased by the Pennsylvania Railroad Company, but the latter company owns six thirteenths of its capital stock, and the business relations between the two companies are close and harmonious.

"5. The Pennsylvania Railroad Company, through certain of its executive officers acting in its behalf, has offered to buy

60 per cent of the capital stock of the Beech Creek Company upon the following terms, *viz.:* The legal title to said stock to be transferred to and held by the Northern Central Railway Company; and in consideration of such transfer, the Pennsylvania Railroad Company to indorse upon $5,000,000 of the bonds of the Beech Creek Company now issued, a contract to buy at 4 per cent upon said $5,000,000 the semiannual 6 per cent interest coupons thereof, with subrogation to the rights of the bondholders upon said coupons against the Beech Creek Company. This offer has been practically, although perhaps not formally, accepted by the owners of said 60 per cent of stock, but nothing further has yet been done, and no formal corporate action upon the proposition has yet been had. The evidence, however, warrants us in finding that the proposition will be carried into effect, if this court does not continue to prevent.

"6. The Pennsylvania Railroad Company, through its said executive officers, was a principal actor in negotiating for the purchase of this stock; and the chief object of the transaction upon its part was to destroy or materially disable the direct and substantial competition between its said leased lines and the Beech Creek Road, so far as the traffic to and from certain portions of the said coal region is concerned.

"These are the important facts; and the question is whether a violation of § 4, article 17, of the Constitution, is threatened by the defendants, or by any of them? If it is, we may enjoin it, for it need not be argued that to destroy such competition as is here disclosed is prejudicial to the interests of the community.

"The section referred to, so far as now material, is as follows: 'No railroad, canal, or other corporation, or the lessees, purchasers, or managers of any railroad or canal corporation, shall consolidate the stock, property, or franchises of such corporation with, or lease or purchase the works or franchises of, or in any way control, any other railroad or canal corporation owning or having under its control a parallel or competing line.'

"It is clear that a violation of this section would be threatened if the Pennsylvania Railroad Company, which leases certain roads directly and substantially competing with the Beech Creek Road, were about to buy and hold in its own name a ma-

jority of the stock of the latter company; for in that case the Pennsylvania Railroad Company, as such lessee, would certainly 'control another railroad corporation owning or having under its control a parallel or competing line.' It will be seen that this language differs, in an important respect, from the language lately construed by the Supreme Court of the United States in the case of Pullman's Palace Car Co. v. Missouri P. R. Co. 115 U. S. 588, 29 L. ed. 499, 6 Sup. Ct. Rep. 194.

"There the contract spoke of 'roads' under the control of the defendant; and it was declared that to own a majority of the stock of a railroad corporation did not give the control of the road, although it might give control of the company. Here, however, the clause of our Constitution just quoted speaks of the control of the company, not of the control of the road; and it seems evident, therefore, that the case referred to is not now in point and need not be further considered. Indeed, it was expressly conceded upon the argument that the Pennsylvania Railroad Company, as the lessee of lines competing with the Beech Creek Road, could not buy this stock and hold it in its own name; but it was strongly urged upon us that the Northern Central Railway Company is to be treated as the purchaser because it is to hold the legal title, and that the question of legality must be determined as if it concerned only this latter company and the Beech Creek corporation.

"This is a vital point in the defense of the Pennsylvania Railroad and Northern Central Railway companies, and we have therefore given it the fullest consideration in our power, but without being able to conclude that we must look at this bargain in any other light than that now cast upon it by the truth. The evidence does not support the position we are asked to take. The offer before us does not in fact come from the Northern Central Railway Company, but from the Pennsylvania Railroad Company through its executive officers; and we are therefore able to deal, even in form, directly with the latter company. Its officers helped to carry on the negotiations, acting in its behalf, and they agreed in its name to the final terms; it is to furnish the only consideration by guarantying in part the coupons of the Beech Creek bonds; and its interest, chiefly and avowedly, is to be advanced by the transaction.

"Is the further fact, that, because it cannot lawfully hold the stock it has contracted to buy, it proposes to have the legal title thereto held by the Northern Central Railway Company, enough to make of no importance the other facts detailed? The case does not even present us with a finished transaction and a legal title already passed. Up to this time, it is the Pennsylvania Railroad Company, acting by its proper executive officers, which has been directly dealing with the owners of the Beech Creek stock, and the transaction can and should be looked at as in truth it is.

"If we consider, also, the reason which led the real parties to propose that the Northern Central Railway Company should hold the legal title to this stock, it will become more clear that justice does not require us even to treat this bargain as already carried out. That reason was, avowedly, to evade the constitutional provision already quoted; and it was believed that if the legal title was held by the Northern Central Railway Company, such evasion could be brought about. We are now asked to deal with the transaction as if it was complete and thus, in effect, to aid the parties in their effort to avoid the law. They are not yet clear of legal difficulties, and we are asked to help them out by assuming the facts to be other than they are, in order that a plain provision of law may be evaded. Legal fictions are not intended for such purposes; they should only be used to bring about a just result, and not to aid in covering up the truth.

"Further, we do not think the Pennsylvania Railroad and the Northern Central Railway companies are in a position to urge, before a court of equity, that the bargain, if fully carried out, would not violate the Constitution. The facts, again, are these: The Pennsylvania Railroad Company made the contract in question, and agreed to furnish the sole consideration, for the purpose chiefly of destroying or disabling a serious competition between its leased lines and the Beech Creek road; that is, for the purpose of violating the Constitution; but when it appears that the illegal nature of the transaction was too plain, the Pennsylvania Railroad Company proposes, and the Northern Central Railway Company agrees, that the legal title to the stock

shall be held by the latter; not because the true nature of the bargain has been changed, and not because of a change in purpose, but simply in order that such nature and such purpose may be, as it is thought, effectively disguised. Being prevented, however, by injunction, they now urge that no such purpose as that intended will in fact be brought about, and ask us to look at the matter as if the Northern Central Railway Company was the independent bona fide purchaser of the stock in question.

"When such a case is in truth presented, we will then determine the questions so earnestly and ably argued, *viz.:* Whether such a holding by the Northern Central Railway Company would in itself violate the Constitution; and if not, whether it would nevertheless be a violation because of the relation between that corporation and the Pennsylvania Railroad Company. But we repeat, the evidence does not now permit these questions to be raised, for, with the facts as stated, the situation is quite different, and we must take it as the parties have made it for themselves. We shall not be doing injustice to the corporations named if we assume that they could do what they were willing to attempt; and they cannot successfully ask us to say that their motive and purpose were different from those which they distinctly avowed.

"If the view above expressed is correct, it fully disposes of the case, for no contract right to do the thing forbidden is set up, and it follows that the injunction against the Pennsylvania Railroad and Northern Central Railway companies must be continued until final hearing. As to the other defendants, it is enough to say that nothing now before us requires us to consider whether in any case they are properly subject to the constitutional provision in question. As the evidence now is, at least, nothing has been proved which calls upon us to continue the injunction against them, and so far as they are concerned it is therefore dissolved.

"A decree may be prepared in accordance with this opinion."

A decree was entered, January 27, 1886, continuing the preliminary injunction until final hearing.

The assignments of error specified, *inter alia,* the action of the

court, (1) in entering the decree of January 27, 1886; and (3) in refusing to qualify its decree against the Northern Central Railway Company so as to enjoin it only from acting in the premises as the instrument or agent of the Pennsylvania Railroad Company.

*Wayne MacVeagh*, for appellants.—The Pennsylvania Railroad Company is fully authorized to become the guarantor of the obligations above mentioned. Act of March 17, 1869.

The public policy of the commonwealth is to encourage the consolidation of management and interests of railroad companies. Acts March 29, 1859; April 23, 1861; May 16, 1861; April 27, 1864; March 24, 1865; April 2, 1868; April 14, 1868; March 17, 1869; April 10, 1869; of February 17, 1870; of April 26, 1870; and of May 3, 1871.

The constitutional prohibition operates to prevent any consolidation of the stock, property, or franchises; the lease of the works or franchises; the purchase of the works or franchises; or the control of a competing line. This does not include an influence arising from the ownership of stock. If it had been so intended, appropriate language would have been used, as in the case of telegraph companies. Const. art. 16, § 12.

The constitutional provision, read in the light of the prior legislation, leads to the same conclusion.

Unless there be restrictions in the charter on the purchase and sale of stock the courts will not add them. Insurance Bank v. Bank of United States, 4 Clark (Pa.) 128.

In State v. Hartford & N. H. R. Co. 29 Conn. 533, and the New York Case in 3 Robertson, 415, and the later cases in Georgia, Ohio, New Hampshire, and New York, there was no privilege granted by law to the companies to do the thing they claimed to do.

The case in New York (reported in 12 Abb. N. C.) is a case also of an attempted consolidation of corporations which were held to be competitive in their nature, and therefore incapable, in the absence of legislative authority, to consolidate with each other; but no such question arose there as arises here.

The leading case in Pennsylvania is that of the Morris Run

Coal Co. v. Barclay Coal Co. 68 Pa. 173, 8 Am. Rep. 159. The case deals with the general subject of public policy as affected by an agreement to prevent competition, but does not touch the question here raised.

The Northern Central Railway Company is not a competing line, and the injunction cannot be sustained against it, in any event. Its motives are not a subject of legal inquiry. The only question is as to the exercise of a legal power possessed by it. If such power exists, it fulfils the law; if that fails, the motive is of no avail. Pender v. Lushington, L. R. 6 Ch. Div. 70; Pennsylvania R. Co.'s Appeal, 80 Pa. 290.

The Supreme Court of the United States has declared the law to be that the legal meaning of "control" does not include the mere ownership of stock even when it amounts to a majority ownership, because such stock may be bought and sold at the will of one party only, and therefore has no character of permanency about it, but contemplates only control by a contractual relation of a stable and permanent character. Pullman's Palace Car Co. v. Missouri P. R. Co. 115 U. S. 588, 29 L. ed. 499, 6 Sup. Ct. Rep. 194.

*Lewis C. Cassidy,* Atty. Gen., and *Robert Snodgrass,* Deputy Atty. Gen., for appellee.—"In the light of ordinary language, the circumstances attending its formation, and the construction placed upon it by the people, whose bond it is" (Agnew, J., Cronise v. Cronise, 54 Pa. 260), it is idle in construing this provision of the Constitution to say that a control resulting from an ownership of stock is not within the prohibition.

The whole scope of prior legislation relating to the consolidation and control of railroad companies in any form, whether by lease, merger, purchase of stock and bonds, or otherwise, was intended to be affected by it; and whatever may have been the prior policy in that regard, it thenceforth became the policy to prohibit, in a modified degree, what it had previously encouraged.

When the people voted upon and adopted this portion of the Constitution, they intended what the language naturally and necessarily imports,—a control by any means whatever, whether legal or actual.

Pullman's Palace Car Co. v. Missouri P. R. Co. 115 U. S. 588, 29 L. ed. 499, 6 Sup. Ct. Rep. 194, under its facts, has no application here. The meaning there given to the word "control" is not its true meaning as used in our Constitution.

In the first place, the court was there construing a private contract, in regard to which the rules of construction are essentially different from those applicable to constitutional interpretation.

In the second place, the "control" there considered was of the railroad and not of the company. The Chief Justice said: "It [the stock-holding company] may control the company, but the company alone controls the road."

The corporation in this case was to issue or at least use its bonds, to enable its stockholders to sell their stock. Article 16, § 7, of the Constitution forbids any corporation from issuing "stocks or bonds except for money, labor done, or money or property actually received.".

Per Curiam:

Decree affirmed, and each appeal dismissed, at the costs of the appellant.