The court,

in a brief opinion by Stowe, J., confirmed both viewsi and decreed a perpetual injunction against the trustees exercising any voting power on plaintifE’e stock, or interfering with any right incident to its ownership.
(The case is reported "at length in 2 Railw. & Corp. L. J. 409.)
Fisher v. Bush, 35 Hun, 641 (1885). Here it was held that a combination of stockholders not to sell their stock nor give proxy on it without concurrent consent of all uniting in the agreement or combination, was void as an unlawful restraint on alienation, against public policy, and, moreover, without consideration ; so that an action by one signer against another, for breach, to the damage of the plaintiff, could not be sustained.
The substance of the complaint was that the plaintiff was one of ten stockholders who held control of a railroad corporation ; and that they *462 agreed in writing with each other that they would not “sell, assign, set over, pledge or give power of attorney to vote, or agree to sell, assign, transfer, set over, pledge or give power of attorney" to vote, in any way, shape or manner, the stock which we respectively and individually own, hold or possess in said company, without the concurrent consent of all signers to this instrumentand the full value of the stock of each was stipulated to be the damages payable by him to the others in case of a breach. This agreement contained also the following clause : “This agreement is made for mutual protection and to prevent the sale of the company’s franchise by a majority of the members of the present board of directors, who are and who represent, a majority of the shares of the capital stock of this company.”
The complaint alleged also that the defendant sold his stock to a stranger without the stipulated consent; that plaintiff's damages equalled the value of his stock, stated; and that by the breach alleged the control of the company wras lost to the associates and passed to a party in the directorship of said company, who, until said breach, represented only a minority of its stock.
Held, that the agreement was void.
1. It was an indefinite restraint upon trade and alienation, and in this respect differed from a reasonable agreement requiring owners of shares to hold them from market for a reasonable and definite period of time, and thus forbiddi»-* a sale by either of his interest to one against whom his associates n-.,ght have a reasonable objection. Moffatt v. Farquhar, 7 Ch. Div. 591, reported in 23 Moak's Eng. R. 731. A stipulation of that character would not be illegal as against public policy, as it would be simply a provision, assented to by all, that a new comer into the transaction should be one approved by the others.
2. The stipulation not to vote by proxy is pernicious, and so connected with the stipulation not to sell that both must fall together. It tends to deprive shareholders of the free exercise of their own judgment, and is one of the methods resorted to for monopoly, and gives a party an opportunity to speculate at an advance over the general public, who remain ignorant of the agreement. Distinguishing Havemeyer v. Havemeyer, 43 Super. Ct. (J. & S.) 506 (affirmed without opinion in 86 N. Y. 618), as a case where the associates were restricted from dealing in other shares except for the profit of all.
3. Moreover the contract had not that adequate and actual consideration which is necessary to uphold a contract in restraint of trade.
Fremont v. Stone, 42 Barb. 169 (1864). Two directors of a corporation agreed with defendants that on payment by one of such directors of a specified sum for a specified number of shares of the stock, *463 new directors to be nominated by those two should be substituted in the place of all the other directors. It does not appear from the report., and. it is not implied that the stock in question would constitute a majority. Held, that the contract could not be specifically enforced in equity because contrary to public policy. The court'say: “The vendors of this stock undertook to change the board of directors of the company for a consideration, and to substitute others at the dictation of the plaintiT-and his co-purchaser ; which of course can' bo done legally and fairly only by the votes of the stockholders ; and if done by the management and contrivance of these defendants, would be a fraud on the stockholders at large, subserving the interests of the two paying, and giving to them the entire control of the company. A contract having this purpose is an attempt improperly to interfere with the rights of others, and is clearly contrary to public policy.”
An agreement between stockholders of a corporation, who together owned a majority of the capital stock, to unite for the purpose of electing directors,—Held, not to conflict with the law or its policy. 1878, Havemeyer v. Havemeyer, 43 Super Ct. (J. & S.) 506.
Nor is an agreement in regard to holding tlieir'stock, and selling the same together, invalid or in contravention of public policy. Ib. See, also, 23 Moak Eng. 756, note, citing other cases.
A contract of one railroad to obtain the control of a parallel competing line, which provides for the purchase of a controlling interest in the stock of the competing line, and for the resignation of its board of directors to be replaced by the purchasing company’s nominees, is in violation of § 4, art. 17, of the Pennsylvania Constitution, prohibiting one railroad to own or control a competing line ; and its validity cannot be sustained on the technical ground that ownership of the stock of a corporation does not give a “control thereof.’’ Pennsylvania R. R. Co. v. Commonwealth (Pa.) 7 Atl. Rep. 368.
In a contract by the president of a railroad company with the president of another parallel competing railroad to transfer to the latter company the control of the former, the 'company thus contracting to obtain control will be considered the real party in interest against whom an injunction will lie to prevent such acquisition of control under that provision of the Pennsylvania Constitution. Ib.
In determining whether one railroad line under the control of another is a parallel competing line within that provision of the Pennsylvania Constitution, the court will not be bound by the actual number of miles of the controlled railroad, but will consider it a parallel competing road, if it is such in fact, by reason of traffic contracts, by which :ts freight is hauled from the end of its own line to another terrain is. Ib.
*464 It is not necessary that a railroad should be completed and in operation in order to bring the corporation within such provision of the Pennsylvania Constitution. Ib.
The purchase by one railroad company of a controlling interest in another company, which competes with roads leased by the first, is within the prohibition in the Pennsylvania Constitution, § 4, art. 17, against one railroad company obtaining control of any competing line, and the transaction will be enjoined although the stock bought is to be taken in the name of a third company; the stock of the latter being largely owned by the first mentioned company, and the purchase being professedly in the interest of that company, and the consideration therefor being paid by it. Pennsylvania R. R. Co. v. Commonwealth, (Pa.) 7 Atl. Rep. 374.
Plaintiffs and defendants, owners of stock, agreed to sell the same together only, and defendants authorized plaintiffs’ agent to sell to P. at a certain price, and agreed that, pending negotiations for the sale, they would neither buy stock nor do anything else to interfere with the negotiations. —Held, that the defendants committed no breach of the agreement by a purchase of stock from a third party, after a notification from the agent that the negotiations for the sale to P. had ended, and that the agreement not to sell separately was annulled by request of the plaintiffs, acceded to by defendants, for leave to sell their stock alone, and the defendants were not liable in damages for a subsequent sale of their stock. 1879, Havemeyer v. Havemeyer, 45 Super. Ct. (J. & S.) 464. A subsequent judgment non-suiting plaintiffs, seems to have been affirmed in 13 Weekly Dig. 125; mem. s. c., 86 N. Y. 618.
An irrevocable power of attorney or proxy, authorizing a vote upon 'stock, is not contrary to public policy, nor vitiated by the fact that the signer reserves a power of transfer of the stock. Brown v. Pacific Mail Steamship Co., 5 Blatchf. 525. So held upon an application for injunction in reference to an election.
A stockholder may revoke his proxy authorizing another to vote, though it was given for value, if necessary to prevent a fraudulent use of it. So held, where the agreement was made upon stock hypothecated to secure a debt, the pledgor having by improper means and for fraudulent purposes caused the stock to bo depreciated in value. Reed v. Bank of Newburgh, 6 Paige, 337.
An agreement made by one who is the president and largest stockholder of a corporation, with those' to whom he sells his stock, that he will resign as an officer and director and procure other directors to *465 resign to make room for persons to he selected by such purchasers of the stock, violates no rule of public policy, and is not void. Barnes v. Brown, 80 N. Y. 527 ; aff’g in part, and rev’g in part, 11 Hun, 315.
The court of appeals in an opinion by Earl, J., after adverting to the fact that tho plaintiff held a majority of the stock and a right to control, say, “It is tho general rule, sanctioned by the policy of the law, that those who have the largest interest in corporations may control them, as they have the greatest interest that they shall be well managed. AYhcn Brown and Seligman succeeded to the interest of the plaintiff, holding a majority of the stock then issued, it was perfectly proper that? they should have the control of the corporation, and it was not improper or illegal for the plaintiff to surrender the control to them. There is. no proof that in obtaining the resignation of the plaintiff and other-directors, and in filling tho vacancies, any fraud or wrong was. intended-upon the corporation or any of its stockholders, or that any of the stockholders, at any time objected to what was done in this respect. It,was simply the mode of transferring the control of tho corporation to .those. who by the policy of the law ought to have it, and I am, unable to see how any polio)' of tho law was violated, or in what way, upon. the evidence, any wrong was thereby done to any one.”
It is not, per so, unlawful for several persons to unite either in a general business, or upon a special venture, of dealing,ip stocks or in a particular stock. Quincey v. White, 63 N. Y. 370; rev’g Same v. Young, 5 Daly, 327.
Nor is a contract of sale and purchase of a fractional share in a cargo . to arrive, the cargo to remain under tho seller’s.cpnirol, apd, be sold by him at his option, and profits or loss to be paid; on his rendering account. Lawrence v. Gallagher, 73 N. Y. 613 ; aff'g 42 Super. Ct. (J. & S.) 309.
For the construction and effect of contracts for jo-in-t adventures in . the stock of a railroad company, to be contrqlled by tnanagors, see also, Erlanger v. New Sombrero Phosphate Co., L. R. 3 App. Cas. 1218; s. c., 24 Moak Eng. 774; Boody v. Drew, 2 Supm. Ct. (T. & C.), 69.
As to liability of syndicate manager; see note in 16 Abb N. C. 380.
An agreement between two parties, each the holder of a large number of railroad bonds secured by mortgage^ that one of them will refrain from bidding at a foreclosure sale so.that the other may bid in the property for their joint benefit, and- that a.pew company shall be after-wards organized, which shall issue bonds ,t° them, proportionately to t-heir respective ownership of the first company’s bonds, is not within the statute of frauds, nor is it void as. against public policy, there being no combination to suppress biddtng-afr, public sale, Cornell v. Utica, I. & E. R. R. Co., 61 How. Pr. 184.
*466 An agreement to pay a certain sum to a savings bank whose assets Jiad become impaired, in consideration of its continuance in business, does not violate public policy. Hurd v. Kelly, 78 N. Y. 588; s. c., 34 Am. R. 567; aff’g 17 Hun, 327, note.
A contract for the sale of all the vendor’s- right, title, interest and .estate in the charter of a railroad corporation, and to assist the .purchaser in obtaining the necessary legislation in relation to land .grants, corporate privileges, &c.—Held, not void as against public policy. Wintermute v. Cooke, 7 Hun, 476. Rev’d in 73 N. Y. 107, on other grounds.
An election of directors of a corporation may be held void on the ground of a pro-conceived scheme, combination or conspiracy to carry ,the election by the use and abuso of legal process and proceedings, and .efforts and contrivances to prevent a fair election.—So held, in an action .against a railroad company to annul aii election of directors. People v. Albany & Susquehanna R.R. Co., 7 Abb. Pr. N. S. 265.
An action may be maintained against a corporation to recover .damages caused by a conspiracy, Buffalo Lubricating Oil Co. v. Standard Oil Co., 12 Northeastern Rep. 825; afl’g 38 Hun, 634.