W. A. SHEAFFER PEN CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 9408. Promulgated December 23, 1927.

*E. H. Pollard, Esq.*, and *Laurence Graves, Esq.*, for the petitioner.
*M. N. Fisher, Esq.*, for the respondent.

844

847

848

OPINION.

GREEN: The principal issue in this case is whether the petitioner's invested capital should be computed in accordance with the provisions of section 331 of the Revenue Act of 1918. The respondent applied section 331 and his action in this respect is alleged as error. In event it is held that the invested capital should not be computed in accordance with section 331, the petitioner contends that in computing its invested capital it is entitled to have included, in addition to the value of tangible property as to which the parties have stipulated, subject to the statutory limitation on intangibles, the value of the good will acquired, which it alleges was of the value of $224,000.

This transaction took the form of an exchange of stock for stock. The committee of stockholders, holding all of the stock of the Iowa corporation, sold or exchanged all of the stock of that corporation for all of the stock of the Delaware corporation. The assets of the Iowa corporation were immediately transferred to the Delaware corporation and shortly thereafter the Iowa corporation was dissolved.

Does such a transaction come within the provisions of section 331 of the Revenue Act of 1918? That section reads as follows:

SEC. 331. In the case of the reorganization, consolidation, or change of ownership of a trade or business, or change of ownership of property, after March 3, 1917, if an interest or control in such trade or business or property of 50 per centum or more remains in the same persons, or any of them, then no asset transferred or received from the previous owner shall, for the purpose of determining invested capital, be allowed a greater value than would have been allowed under this title in computing the invested capital of such previous owner if such asset had not been so transferred or received: Provided, That if such previous owner was not a corporation, then the value of any asset so transferred or received shall be taken at its cost of acquisition (at the date when acquired by such previous owner) with proper allowance for depreciation, impairment, betterment or development, but no addition to the original cost shall be made for any charge or expenditure deducted as expense or otherwise on or after March 1, 1913, in computing the net income of such previous owner for purposes of taxation.

The petitioner's contention is that, " The statute is phrased to cover direct ownership, viz.: a partnership, an individual or unincorporated association where the ownership or control are direct and where

there is no well recognized intervening entity. It can not by its very terms effect a case of corporate ownership." It contends that, "No interest or control in the trade, business or property or in any. asset of a corporation can be vested in a stockholder." Applying the foregoing to this case, its position is, in brief, that the Iowa corporation· was the sole owner of the assets and that it transferred them to the Delaware corporation and that no " persons " ever had any " interest or control in " such assets.

The petitioner's contentions are premised upon well recognized principles of corporation law and it strenuously insists that these principles must be read into the statute and our construction thereof made in the light of such principles. We recognize the principles and the broad extent of their applicability. In the construction of the taxing statute, both the courts and this Board have repeatedly accepted and applied them.

Even a cursory examination of the statute discloses that it is limited in its scope to those cases in which " an interest or control in such trade or business or property of 50 per centum or more remains in the same persons, or any of them." Clearly then we are concerned only with such interest or control as was had by persons. Section 1 of the Revenue Act of 1918 reads, in part, as follows:

That when used in this Act—
The term "person" includes partnerships and corporations, as well as individuals.

and when, having in mind the statutory definition, we read the above quoted portion of section 331, it is clear that it is not limited in its application to individuals, partnerships, etc., as contended by the petitioner. This, of course, is not a complete answer to the question, for the Iowa corporation and the Delaware corporation are not the same corporations in any sense and no interest or control remained in the Iowa corporation after the reorganization. It is, however, a complete answer to the petitioner's first contention.

If this case falls within section 331 it can only be because " an *interest or control* in such trade or business or property of 50 per centum or more remains in the same " *individuals*. We believe the word " interest " as used in the section is intended to cover the rights of individuals in property and may not be used as descriptive of the relationship existing between a stockholder and the corporation or its assets.

In Webster's New International Dictionary the verb control is defined as follows: " To exercise restraining or directing influence over; to dominate; to regulate; hence to hold from action; to curb; subject; over-power." According to this authority it is synonymous with " restrain, rule, govern, guide, regulate, hinder, direct."

In *Yazoo & M. V. R. Co.* v. *Searles*, 85 Miss. 520; 37 So. 939, 953, the court said, " Control of the business of a corporation within the meaning of all anti-trust statutes, so far as by our researches we have been able to discover, means power to dictate the corporate action of the corporation."

Judge Thayer, in the opinion in the case of *United States* v. *Northern Securities Co.*, 120 Fed. 721, said:

It will not do to say that, so long as each railroad company has its own board of directors, they operate independently, and are not controlled by the owner of the majority of their stock. It is the common experience of mankind that the acts of corporations are dictated and their policy is controlled by those who own the majority of their stock. Indeed, one of the favorite methods in these days, and about the only method, of obtaining control of a corporation, is to purchase the greater part of its stock. It was the method pursued by the Northern Pacific and Great Northern Companies to obtain control of the Chicago, Burlington & Quincy Railroad. And, so long as directors are chosen by stockholders, the latter will necessarily dominate the former, and in a real sense determine all important corporate acts. The fact that the ownership of a majority of the capital stock of a corporation gives one the mastery and control of the corporation was distinctly recognized and declared in *Pearsall* v. *Great Northern Railway*, 161 U. S. 646, 671, 16 Sup. Ct. 705, 710, 40 L. Ed. 838. The same fact has been recognized and declared by other courts. *Pennsylvania R. Co.* v. *Commonwealth* (Pa.) 7 Atl. 368, 371; *Farmers' Loan & Trust Co.* v. *New York & N. Ry. Co.*, 150 N. Y. 410, 425, 44 N. E. 1043, 34 L. R. A. 76, 55 Am. St. Rep. 689; *People ex rel.* v. *Chicago Gas Trust Co*, 130 Ill. 268, 22 N. E. 798, 802, 8 L. R. A. 497, 17 Am. St. Rep. 319. In opposition to this view counsel cite *Pullman Car Co.* v. *Missouri Pacific Co.*, 115 U. S. 587, 596, 6 Sup. Ct. 194, 29 L. Ed. 499, but in that case the meaning of the word "controlled," as used in private contract, was the point under consideration, and what was said on the subject cannot be held applicable to cases arising under the anti-trust act, when the point involved is whether the ownership of all the stock of two competing and parallel railroads vest the owner thereof with the power to suppress competition between such roads. We entertain no doubt that it does. Indeed, we regard the suppression of competition, and to that extent a restraint of commerce, as the natural and inevitable result of such ownership.

Our views in this regard are entirely in accord with those of Judge Thayer. We therefore conclude that the ownership of a majority of the stock of a corporation gives the owner or owners control of the corporation and consequently control of the trade, business, or property of that corporation, and since the holders of all of the stock of the old corporation owned all of the stock of the new, they have the requisite control and come squarely within this portion of the statute. It is not necessary for us to consider whether the owner or owners of less than the percentage named in the statute have *pro tanto* a control within the meaning of the statute.

While it is true that the scheme of reorganization contemplated the ultimate disposition by the stockholders as of the date of the reorganization, of stock to the extent that they would no longer hold

a majority thereof, it is equally true that no time was fixed for such disposition and it was anticipated that some considerable time would be required to sell the stock as contemplated. Moreover the stockholders were under no obligation to sell. After the reorganization on January 14, 1918, the control was still in the hands of the same persons and remained there until December 31, 1918. In all cases under section 331 wherein it must be determined whether an interest or control *remains*, at least two factors must be considered. First, whether the "persons" validly retained an interest or control and, second, the time within which any contractual obligations must be performed. Here, the stockholders of the old company lawfully came into possession of all of the issued stock of the new, with no obligation on their part remaining unperformed. Their subequent disposition of stock, both as to time and amount, was entirely discretionary. We therefore hold that the control of 50 per centum or more remained in the same persons and that the invested capital of the petitioner shall be computed as provided in section 331. See *E. E. Atkinson & Co.*, 2 B. T. A. 250, and *Shipowners & Merchants Tugboat Co.*, 4 B. T. A. 403. Our conclusion in this respect makes it unnecessary to consider the contention of the petitioner relative to the inclusion in invested capital of the value of good will.

*Judgment will be entered for the respondent.*

Considered by STERNHAGEN and ARUNDELL.