THE FARMERS' LOAN AND TRUST COMPANY, as Trustee, Respondent, *v.* THE NEW YORK AND NORTHERN RAILWAY COMPANY and Others, Respondents; and ARTEMAS HOLMES and Another, Appellants.

*Mortgage foreclosure — a misapplication of its earnings by the mortgagor is not a defense thereto — rights of stockholders of a corporation, as bondholders thereof — rights of a competing corporation as a bondholder — a provision for default in a mortgage construed — allegation as to request to foreclose — duties and rights of the majority stockholders in a corporation.*

In an action brought to foreclose a mortgage given by a railroad corporation a defense was interposed that the earnings of the mortgagor had been misapplied in order to bring about a default.

*Held,* that such fact did not constitute a defense as against the trustee named in such mortgage or any bondholder;

That it was not a ground of complaint to the mortgagor or its stockholders that there had been a misapplication of the mortgagor's earnings.

It is in no respect illegal for a stockholder in a corporation or its officers or directors to purchase and hold its bonds or to enforce the payment thereof in the usual way.

A corporation holding bonds of a competitor has the right, so long as it violates no duty owing to a corporate mortgagor or its stockholders, to avail itself of all the stipulations of the contract contained in such bonds and the mortgage given as collateral thereto, although its object may be to cause a foreclosure of such mortgage and to become the purchaser of the property at the sale; such pur-

pose is not illegal, affords no ground of complaint to stockholders of the mortgagor, and is not available as a defense to an action brought to foreclose such mortgage.

A mortgage given by a railroad company contained the following provision : "In the event of any of the defaults mentioned in the next preceding article, the party of the second part may, and upon the written request of the holders of $2,000,000 * * * of said bonds * * * shall, apply to any court having jurisdiction * * * for a foreclosure and sale of the mortgaged premises."

*Held,* that two cases were provided for, in one of which the trustee might act upon his own motion, and in the other of which his action could be coerced ;

That it was not necessary for the trustee, in an action brought by him to foreclose such mortgage, to allege in his complaint or to prove that he had been requested to foreclose the same.

The holders of a majority of the shares of stock of a corporation owe to the minority stockholders thereof much the same duty which the directors of a corporation owe to all of the stockholders therein, and they may not use their power to obtain an advantage for themselves at the expense of the minority, and when that is done equity will interfere to restrain the wrongful acts.

All the stockholders of a corporation must be permitted to share equally in the benefits of its management, and the law requires both from the officers of a corporation and the majority of the stockholders thereof the utmost good faith in the management and control of the corporate business and property ; but between themselves stockholders owe no duty to each other, and in the purchase and control of stock or of any of the corporate obligations each stockholder acts for himself and is in no sense a trustee for others.

APPEAL by the defendants, Artemas H. Holmes and another, from a judgment of foreclosure and sale of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Westchester on the 2d day of December, 1893, upon the decision of the court rendered after a trial at the Westchester Special Term; and also from an order made at the Westchester Special Term and entered in the said clerk's office on the 2d day of November, 1893, denying the defendants' motion to change the place of trial from the county of Westchester to the county of New York ; and also from an order made at the Westchester Special Term and entered in said clerk's office on the 2d day of November, 1893, denying the defendants' motion for a reference ; and also from an order made at the Westchester Special Term and entered in said clerk's office on the 2d day of November, 1893, denying the defendants' motion for a postponement of the trial of the action, with notice of an intention to bring up for review on such appeal the aforesaid orders.

*Simon Sterne* and *Holmes & Adams*, for the appellants.

*David McClure, Ashbel Greene* and *Thomas Thatcher*, for the respondents.

BROWN, P. J.:

This action was brought to foreclose a mortgage made by the New York and Northern Railway Company to the plaintiff, as trustee, to secure the payment of bonds amounting to the sum of $3,200,000.

The railway company did not defend, but the defendants Holmes and Pick were permitted by the court to intervene, and serve an answer to the complaint, and they have appealed from the judgment.

Prior to January, 1893, the majority of the bonds and stock of the Northern road were owned by the New York Loan and Improvement Company. About January twenty-eighth bonds to the amount of $1,700,000 and a majority of the stock were sold by that company to Drexel, Morgan & Co., who in April, 1893, sold them to the New York Central and Hudson River Railroad Company. On July 14, 1893, the Central Company entered into an agreement with Louis V. Bell and Henry K. McHarg for the purchase of upwards of $700,000 of the bonds secured by the mortgage in suit, which agreement provided that the bonds might be used by Drexel, Morgan & Co. for the purpose of reorganizing the Northern Company, either by foreclosure or otherwise, according to such plan as they should deem proper.

The mortgage in suit was dated October 1, 1887, and the interest upon the bonds was payable semi-annually on December first and June first. Up to December 1, 1891, the interest was payable from net income only, subject to the right of the company to use the income for betterments, improvements and other purposes.

No interest was ever paid on the bonds. Coupons falling due June 1, 1892, and payable absolutely, were presented for payment, and protested. Default was also made in payment of coupons due December 1, 1892, and June 1, 1893.

The mortgage provided that if default in payment of principal or interest should continue for twelve months after presentation of the bonds or coupons for payment, the plaintiff might, and upon request of the holders of $2,000,000 of bonds then outstanding and unpaid should, apply for a foreclosure and sale of the mortgaged property.

On July 20, 1893, Drexel, Morgan & Co., holding $1,700,000 of the said bonds, and being authorized thereto by the Central Company, and also representing the owners of the Bell and McHarg bonds, requested, in writing, the plaintiff to take proceedings for the foreclosure and sale of the mortgaged property, and thereafter, on July twenty-seventh, this action was commenced.

The first defense alleged is that the earnings of the Northern Company had been misapplied in order to bring about a default. This defense involves neither the plaintiff or any bondholder. If there was any misapplication of the earnings prior to June 1, 1892, it was the act of the mortgagor alone. It had the right to apply all the net earnings prior to December 1, 1891, to the improvement of the road, and the action of the directors was approved by the stockholders at their annual meeting, and if the just and proper limitation of that authority was exceeded, the loss fell upon the bondholders, and it does not lie with the mortgagor or its stockholders to complain of this action. From the date of the mortgage until the foreclosure the appellant Holmes was a stockholder and attended the annual meetings, and had knowledge of the manner in which the income of the road was applied by the directors, while the appellant Pick purchased his stock after the default in the payment of the coupons.

The second proposition asserted as a defense is that the Central Company acquired a majority of the bonds and stock of the Northern Company for the purpose of destroying it as a competitor and securing its property, and to that end so managed its business that its obligation should not be met or its default repaired. Nothing appears in the evidence to support this claim. Defaults on two coupons had occurred before the Central Company became the owner of any of the stock or bonds, and it exercised no control over the management of the Northern Company after it acquired the stock. As a stockholder it was in no respect illegal for it to purchase and hold the bonds, or to enforce their payment in the usual way.

Officers and directors of a corporation may own its bonds and enforce their payment. (*Duncomb* v. *N. Y., H. & N. R. R.*, 84 N. Y. 190; 88 id. 1; *Harpending* v. *Munson*, 91 id. 652.)

The Central Company had a right, so long as it violated no duty owing to the mortgagor or its stockholders, to avail itself of all the

stipulations of the contract contained in the bonds and mortgage, and although its object may have been to cause a foreclosure and to become the purchaser of the property at the sale, that purpose was not illegal and afforded no ground of complaint on the part of the appellants, and is not available as a defense to this action. It certainly was under no obligation to advance money to repair the default which had occurred before the purchase of the bonds.

Evidence was offered and excluded upon plaintiff's objection, which, it is claimed, would have tended to show a diminution of revenue of the Northern road subsequent to the purchase of the stock by the Central Company.

This evidence was not pertinent to any issue in the case, and had no proper tendency to show any unlawful action upon the part of the Central Company as a stockholder. Its rejection was not error.

The third defense is that the request of holders of $2,000,000 of the bonds was requisite to the commencement and maintenance of the action; that the Central Company had no power to purchase bonds and stock of another railroad corporation, and that an action instituted upon its request could not be proceeded with.

This contention rests upon a misconception of the mortgage.

The provision applicable to the case is as follows: " In the event of any of the defaults mentioned in the next preceding article, the party of the second part may, and upon the written request of the holders of $2,000,000 * * * of said bonds * * * shall, apply to any court having jurisdiction * * * for a foreclosure and sale of the mortgaged premises."

Two cases are provided for. In one the trustee may act upon his own motion. In the other his action may be coerced.

It was not, therefore, essential that plaintiff should have alleged in its complaint that it had been requested to foreclose, and it is not essential to the support of the judgment that that fact should have been proven upon the trial. (*Morgan's S. S. Co.* v. *Texas Central Railway Co.*, 137 U. S. 171; *Guaranty Trust Co.* v. *Green Cove & M. R. R. Co.*, 139 id. 137.)

If the fact be that there was any informality in the request made, the plaintiff may upon this appeal avail itself of the provision of the

mortgage quoted, as it would be a useless proceeding to reverse the judgment upon this ground, when upon a new trial the plaintiff would be entitled to the same relief without proof that any request was made.

It is of no importance, therefore, to this case whether the Central Company's act in acquiring its bonds and stock was authorized or not.

Ownership of the bonds is not in question, and the validity of that act may be left to be decided when it shall be questioned by some person interested in its determination.

The main argument, however, which the learned counsel for the appellants has addressed to us is based upon the assumption that the Central Company became an owner of a majority of the stock of the Northern Company. As the disability of the Central Company would apply equally to the ownership of stock and bonds, we shall assume, for the purpose of this appeal, that it had the power to purchase these securities.

The meaning of section 40, chapter 688, Laws 1892, is, we think, hardly debatable; and power existed under that statute to acquire ownership of the stock and bonds in question. If we are wrong, however, in this, the argument addressed to the court, and which I shall now briefly consider, has no force and no application to the case, as it rests solely upon the ownership by the Central Company of a majority of the stock in the Northern Company.

The argument is, that the Central Company, as the owner of the majority of stock, occupied a sort of trust relation towards the minority stockholders, which in some way is available to them as a defense to this action. I have been unable to learn from the appellants' written or oral argument what is the practical application to this case of the relation that he claims to exist between majority and minority stockholders. If it is intended to assert that the Central Company could purchase bonds of the Northern road only in trust for all stockholders, the answer is that there is no such rule of law.

Undoubtedly the holders of the majority of the shares of a corporation owe to the minority much the same duty which directors owe to all the stockholders. They may not use their power to obtain advantages at the expense of the minority, and when that is

done equity will interfere to restrain the wrongful acts. All must be permitted to share equally in the benefits, and the law requires, both from the officers of the corporation and the majority stockholders, the utmost good faith in the management and control of the corporate business and property. But between themselves stockholders owe no duty to each other. In the purchase and control of his stock or any of the corporate obligations each stockholder acts for himself, and he is in no sense a trustee for others. (*Gamble v. Queens County Water Co.*, 123 N. Y. 91.)

The Central Company purchased the bonds after default in payment of the coupons. It had a right to hold and enforce these obligations and was subject to no restraint in so doing, except such as flowed from the terms of the contract.

As a stockholder it was not responsible for the default and was under no obligation to contribute money to pay the interest or relieve the Northern Company from the effects of the default.

It could remain passive until foreclosure and become a purchaser of the mortgaged property, or receive payment of its bonds from the proceeds of the sale, without trespassing upon any right of the other stockholders.

But assume that it intended to compel a foreclosure, and for that purpose entered into the contract with McHarg and Bell for the purchase of additional bonds, so that it should control an amount sufficient to make the request of the trustee necessary to compel its action, there is nothing in the act of purchase which violated any legal duty which it owed to the corporation or the other stockholders. It had a right to purchase the bonds, and having the bonds it had a right to enforce their payment. But had it not also the right to request the trustee to foreclose if such request was essential to the enforcement or protection of its rights as a bondholder? Clearly, it had a right to avail itself of every stipulation in the mortgage, and no duty to any other stockholder required it to forego or surrender any of the rights annexed to the bonds. But, as I have already pointed out, this question is not of the slightest consequence to the appellants, as no request was necessary to institute this action, and the absence of such would not lead to a reversal of the judgment.

There is no error in the judgment and it must be affirmed.

We have examined the questions arising upon the appeals from the orders denying motions for a change of the place of trial, for a reference and for a postponement of the trial; no error appears upon any of the appeals and the orders are affirmed.

Judgment and orders are affirmed, with costs to be paid by the appellants.

PRATT, J., concurred; DYKMAN, J., not sitting.

Judgment and orders affirmed, with costs to be paid by appellants.