FARMERS' LOAN & TRUST CO. v. NEW YORK & N. RY. CO. et al. (Supreme Court, Appellate Division, Second Department. June 17, 1904.) Action by the Farmers' Loan & Trust Company, as trustee, against the New York & Northern Railway Company and others. Artemas H. Holmes and Nathaniel A. Elsberg, for appellants. Thomas Thacher (James F. Horan, on the brief), for respondent.

PER CURIAM. Order affirmed, with $10 costs and disbursements.

WOODWARD, J. (dissenting). This action was brought July 20, 1893, to foreclose a second mortgage upon the property of the New York & Northern Railway Company (hereafter referred to as the "Northern Company"). The mortgage was made by the Northern Company, and delivered to the plaintiff as trustee, to secure the payment of second mortgage bonds amounting to $3,200,000. This mortgage was made in furtherance of a plan to reorganize the predecessor of the Northern Company, and the interest on the bonds for the first four years was payable only out of the net earnings, and no interest became due under the terms of the mortgage until June 1, 1902. By the terms of the mortgage no action for foreclosure could be instituted until one year after default, when the plaintiff was authorized, in its discretion, to commence such action, and upon the written request of persons holding $2,000,000 or more of the bonds of the Northern Company it was made the duty of the plaintiff to act. The capital stock of the Northern Company consisted of $3,000,000, par value, of common stock, and $6,000,000, par value, of preferred stock, making an aggregate capital of $9,000,000. On the 20th day of July, as above mentioned, Drexel, Morgan & Co., claiming to own or represent the required amount of bonds, made a written request to the plaintiff to bring this action, and to declare the whole amount of principal and interest due, under the terms of the mortgage. None of the original defendants in that action interposed any defense; but on the 5th day of October, 1893, on their own motion, Artemas H. Holmes and Alfred R. Pick, owners of about 20,000 shares of preferred and common stock, were made defendants in the action and served an answer. These intervening stockholders appear in the action on behalf of themselves and others similarly situated. In their answer, with other defenses, they in substance allege that this action was brought in pursuance of an unlawful plan and combination by and between the New York Central & Hudson River Railroad Company (hereafter referred to as the Central Company) and others acting for it to render the stock of the Northern Company valueless, and to secure its property for the benefit of the Central Company; that the latter, in order to carry such plan into effect, purchased a large number of the second mortgage bonds and also a majority of the stock of such company; that by virtue of its ownership of a majority of such stock, and preparatory to the foreclosure of the mortgage, it obtained and assumed control of the affairs of the Northern Company by causing changes in its directory and officers, so as to make them favorable to the Central Company, thereby preventing the Northern Company from saving its default in payment of the interest then due, and from taking measures for its safety, or from resisting the Central Company's scheme to acquire its property by such foreclosure; that the Northern Company and the Central Company owned paralleling and competing lines, and that by the means already referred to the latter company sought to secure the property of the former through such foreclosure for its own benefit and at a price much less than its true value; that this was rendered possible by its acquiring a majority of the stock of that company, and thereby being able to control the affairs of the Northern Company, and to so manage its business in collusion with its directors and officers that its obligations could not be met or its default made good; that such acts on the part of the Central Company were fraudulent, and prohibited by the laws of the state; and that the written request to the plaintiff, asking for a foreclosure, did not comply with the terms of the provisions of the mortgage, as the persons making it were not at the time holders of $2,000,000 of the bonds it was given to secure. Farmers' Loan & Trust Company v. New York & Northern R. Co., 150 N. Y. 410, 412–414, 44 N. E. 1043, 34 L. R. A. 76, 55 Am. St. Rep. 689. Upon the trial of the action the appellants sought to prove that after the Central Company became the owner of such stocks and bonds, and while its officers were in substantial control of the Northern Company, they declined to accept traffic from other roads that would have produced a fund with which to pay the interest due on the bonds in question; that the income of the road, which should have been employed to pay such interest, was used for other improper purposes; and that such action caused the inability of the Northern Company to pay the interest and thus cure its default. This evidence was rejected, the appellants excepting, and in reversing the judgment for this error the court enters into an elaborate discussion of the rights of minority interests in such corporations, and clearly indicates that, had the appellants been permitted to establish the facts which they offered to prove, it would have constituted a defense to the action, because of

the fraud on the part of the Central Company, acting through Drexel, Morgan & Co. and the colluding officials 'of the Northern Company and the plaintiff. See the principal case at page 431, 150 N. Y., page 1048, 44 N. E., 34 L. R. A. 76, 55 Am. St. Rep. 689. The trial court, as we have already indicated, found in favor of the plaintiff; there being no dispute as to the regularity of the mortgage, the default, etc., and a decree of foreclosure and sale was entered. The General Term (78 Hun, 213, 28 N. Y. Supp. 933) affirmed the judgment, and the Court of Appeals reversed the same upon the grounds which we have already pointed out. Acting under the decree of foreclosure and sale, the plaintiff disposed of the property of the Northern Company, and the appellant Holmes has in the meantime made a motion for a restitution, which has been denied. 64 App. Div. 620, 72 N. Y. Supp. 1101; 168 N. Y. 668, 61 N. E. 1129. The Court of Appeals, in denying the motion, refers back to the original opinion (150 N. Y. 410, 44 N. E. 1043, 34 L. R. A. 76, 55 Am. St. Rep. 689), which directs a reversal of the judgment and a new trial, with costs to abide the event. It seems clear to me that the intention of the court was to indicate that, where the case was sent back for a new trial, the court, in the exercise of its discretion, might properly refrain from exercising the power granted under section 1323 of the Code of Civil Procedure (see Marvin v. The Brewster Iron Mining Co., 56 N. Y. 671; Carlson v. Winterson, 7 Misc. Rep. 15, 27 N. Y. Supp. 368), and leave the parties free to dispose of the question in the litigation upon such new trial, or upon the final determination of the merits of the case. In either event, there is nothing in the decision of the motion to stand in the way of the appellants in the motion now before this court, which seeks permission to supplement the original complaint by the addition of allegations showing the consummation of the original fraudulent conspiracy to purchase the property of the Northern Company at less than its real value, and without regard to the rights of minority stock and bond holders, and to bring in the necessary parties to completely dispose of the controversy, restoring the appellants and the Northern Company to their rights as they existed before the commencement of the action. The suggestion of the learned court at Special Term that this is "merely a claim for restitution, which will be properly sought after defendants have brought the case to trial and dismissed the complaint," and that "the remedy then by motion will be as ample and searching as an action in equity," is hardly justified by the situation in which the appellants are now placed. The provision of section 1323 of the Code of Civil Procedure is that: "When a final judgment or order is reversed or modified, upon appeal, the appellate court, or the General Term of the same court, as the case may be, may make or compel restitution of property, or of a right, lost by means of the erroneous judgment or order; but not so as to affect the title of a purchaser in good faith and for value." Assuming that the appellants upon the trial will be able to establish the facts which they offered to prove upon the previous trial, they will be entitled to a judgment dismissing the complaint. The final judgment, we may assume, will not be reversed as to them, and the jurisdiction of the appellate court to order restoration depends upon the reversal of such final judgment, the order of restitution having already been denied as to the reversal which has been made in their favor. If the complaint was dismissed, and the judgment finally affirmed, the appellate court, under the Code, would have no authority to order a restitution. There would simply be an end of the action, and the appellants, at the end of a litigation which has been before the courts for more than ten years, would be no nearer the possession of their property than they were in the beginning; for, if the allegations which they ask to set up in their supplemental complaint are true, the property is now vested in a corporation created since this action was commenced, and it is now subject to at least two mortgages. It is fair to assume that the present owners of the title, as well as those having interests under these mortgages, will claim to have come into the possession of the property rights in good faith and for value, which must involve yet other litigation for these appellants, who have, if the allegations of their original complaint are established, been fraudulently deprived of their rights as owners of equitable interests in the Northern Company, which has succumbed to the enervating touch of an unlawful conspiracy.

But, assuming that the court, under its general powers, could issue an order of restitution, the property is not in the hands of the plaintiff, which acted merely in its capacity of a trustee, and there is no other party before the court. It is probably true that, the transaction being vitiated by fraud, there would be some way of recovering damages; but this involves more litigation, years hence, after the present action has been determined. It is the policy of the law, through its equitable tribunals, to prevent multiplicity of actions, and to give litigants complete relief in a single action; where this can be accomplished without prejudice to the rights of individuals. The appellants are willing to come into a court of equity in defense of their rights, and assume the burden of proving, not only that the foreclosure action was brought about by a fraudulent conspiracy to deprive minority stockholders and bondholders of their property, but that this fraudulent conspiracy has been consummated in such a manner that the entire transaction may be set aside and the property restored to the Northern Company, its rightful owner, with an opportunity to resume its corporate functions and to give value to the property thus wrongfully taken from it, to the detriment of the original owners of its securities. The transaction, in the view which the appellants allege, and which they must sustain in order to receive any benefit from the litigation, is a single fraudulent conspiracy to take the property of the Northern Company and to make use of it for the benefit of the Central Company and those involved in the various transfers, mortgages, etc. The fraudulent character of the transaction was known when the answers were originally made, the details have been worked out and consummated since that time, and unless

the appellants are permitted to show the history of the transaction, bringing in all of the parties who have since become involved in the conspiracy, there is little prospect that the active defendants in this action will live long enough to realize any substantial benefit from their intervention. It is true, of course, that that which is originally void does not by lapse of time become valid (Broom's Legal Maxims [4th Ed.] 143); but the passing years, discouraging delays, personal infirmities, and death do intervene and prevent justice, and it is peculiarly the province of equity, having once gained jurisdiction of a case, to retain control until the ends of equity have been attained. The appellants have, by an expensive litigation, established their right to relief from the judgment of foreclosure and sale, if they are able to produce the evidence to support the allegations of fraud and collusion made in their original pleadings, and it would be a baleful confession of impotency on the part of a court of equity to hold that this fraud could not be followed out and righted by bringing in every party who has participated in the wrong. This power existed in courts of equity, by the very law of their being, before there were any Codes. Smith v. Hilton, 50 Hun, 236, 239, 2 N. Y. Supp. 820, and authorities there cited; Derham v. Lee, 87 N. Y. 599, 604, and authority there cited. The provisions of our Code are not in derogation of this principle, but apply it in all actions where the controversy can be ended by one hearing and adjudication. Derham v. Lee, supra; Bradley v. Bradley, 165 N. Y. 183, 187, 58 N. E. 887; see sections 446, 447, 452, Code Civ. Proc. Not only all persons whose rights may be affected by the judgment should be brought into court, but all whose presence is essential to the protection of any party to the action. Mahr v. N. U. F. Ins. Society, 127 N. Y. 452, 461, 28 N. E. 391, and authorities there cited. And in Fisher v. Rutherford, 1 Bald. 194, Fed. Cas. No. 4,823, it was held that parties might be added after the reversal of a final decree, and the case remanded to the circuit court, which is in harmony with the general theory of our Code practice. See sections 452 and 723 of the Code of Civil Procedure. As was said in Bradley v. Bradley, 165 N. Y. 187, 58 N. E. 888: "The fraud alleged is of that single character and bifold or manifold effect that, in order to present its full scope, both causes of action should be united." And, this case having been sent back for a new trial, the pleadings should be so amended or supplemented as to present the entire conspiracy as it has been consummated under the improper judgment. The original fraud vitiates every step taken in the transfer of the property, where such transfer was made with knowledge of the facts, and the appellants should not be denied the right to reach a final adjustment of their rights upon a new trial of this action, which stands now upon the same footing that it would stand if there had been no trial, except that the law of the case, in some of its aspects, has been determined. The order appealed from should be reversed.