THE FARMERS' LOAN AND TRUST COMPANY, as Trustee, Respondent; v. THE NEW YORK AND NORTHERN RAILWAY COMPANY et al., Respondents, and ARTEMAS H. HOLMES and ALFRED R. PIOK, Appellants.

1. CORPORATIONS — CONTROL OF ONE CORPORATION BY ANOTHER, HOLDING MAJORITY OF STOCK — ASSUMPTION OF TRUST RELATION TO MINORITY STOCKHOLDERS. Where a majority of the stock of a corporation is owned by another corporation, and the latter assumes the control

of the business and affairs of the first corporation, through its officers, and directors, it assumes the same trust relation towards the minority stockholders of the controlled corporation that a corporation itself usually bears to its stockholders; and when it appears that it has made use of such trust relation to secure or promote some selfish interest, it is enough to set a court of equity in motion and to require the majority stockholding corporation to explain such a transaction.

2. ENFORCEMENT BY CONTROLLING CORPORATION OF DEFAULTED OBLIGATION OF A CORPORATION OF WHICH IT IS THE MAJORITY STOCK-HOLDER — RIGHTS OF MINORITY STOCKHOLDERS. A corporation cannot acquire the majority of the stock of another corporation, obtain control of its affairs, divert the income of its business, refuse business which would have enabled it to pay its interest charges and avoid default, and then institute an action in equity to enforce its defaulted obligations against such corporation, with the avowed purpose of obtaining control of its property at less than its value, to the injury of its minority stockholders.

3. RAILROAD MORTGAGE — FORECLOSURE AT INSTANCE OF RAILROAD COMPANY HOLDING MAJORITY OF STOCK OF MORTGAGOR COMPANY — RIGHTS OF MINORITY STOCKHOLDERS — MATERIAL EVIDENCE. On the trial of an action brought by the trustee of a railroad mortgage, at the instance of a railroad company which held a majority of the stock and defaulted bonds of the mortgagor company, and controlled its affairs, to foreclose the mortgage, and obtain a sale of the mortgaged property, for the purpose of enabling the majority stockholding company to obtain control thereof at less than its value, it is error to reject, as immaterial, evidence offered by intervening minority stockholders of the mortgagor company to show that, after the majority stockholding company became the owner of a majority of the stock and bonds of the mortgagor company, and while its officers were in control of the latter corporation and its affairs, it declined to accept traffic from other roads which would have produced a fund with which to pay interest due on the mortgage bonds; that the income of the road, which should have been employed to pay such interest, was used for other and improper purposes, and that such action upon the part of the majority stockholder occasioned the inability of the mortgagor company to pay the interest and cure the default.

4. PURCHASE, BY ONE CORPORATION, OF STOCK OF ANOTHER — EQUITY. The right of a corporation to purchase stock and bonds of another corporation, even if given by statute, confers upon the purchaser no authority to employ the stock and bonds for purposes condemned by the principles of equity.

5. RAILROAD MORTGAGE — MAINTENANCE OF ACTION BY TRUSTEE. Quære, whether an action, commenced by the trustee, upon the request of persons purporting to own the requisite amount of bonds, to foreclose a railroad mortgage which provides that in case of default the trustee may, of his own motion, bring an action of foreclosure, and that he must

do so if requested by the owners of a certain amount of the mortgage bonds, can be maintained when it is shown that the requesters did not in fact own the bonds on which their request was based.

*Farmers' L. & T. Co. v. N. Y. & N. R. Co.*, 78 Hun, 213, reversed.

(Argued June 11, 1896; decided October 20, 1896.)

Appeal from judgment of the General Term of the Supreme Court in the second judicial department, entered June 30, 1894, which affirmed a judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term.

This action was brought to foreclose a second mortgage upon the property of the New York and Northern Railway Company, made by it and given to the plaintiff as trustee to secure the payment of second mortgage bonds issued by that company amounting to three million two hundred thousand dollars. This mortgage was made in pursuance of a plan for the reorganization of the predecessor of the New York and Northern Railway Company. The interest on the bonds for the first four years was payable only out of the net income, and no interest became due under the mortgage until June 1, 1892. It provided that no foreclosure could be had until the expiration of one year after default in the payment of the interest, and that then the plaintiff might, and upon the written request of the holders of two millions in amount of such bonds should, apply to a court having jurisdiction for a foreclosure and sale of the mortgaged premises. The capital stock of the New York and Northern Railway Company consisted of three million dollars, par value, of common stock, and six million dollars, par value, of preferred stock, making a total of nine million dollars.

On July 20th, 1893, Drexel, Morgan & Company, claiming to own a portion and to represent the holders of another portion of the second mortgage bonds, which together amounted to more than two million dollars, requested the plaintiff to take proceedings for the foreclosure of the mortgage, and under a provision in it to that effect to declare the whole principal and interest secured thereby to be at once due and payable.

None of the original defendants interposed any defense ; but on October 5th, 1893, on their own motion, the appellants were made parties defendant in the action, and served an answer.

The appellants are stockholders of the New York and Northern Railway Company, representing about twenty thousand shares of preferred and common stock, and appear in this action on their own behalf and also on behalf of the holders of the other shares represented by them.

In the answer the appellants, with other defenses, in substance, allege that this action was brought in pursuance of an unlawful plan and combination by and between the New York Central and Hudson River Railroad Company and others acting for it to render the stock of the New York and Northern Railway Company valueless, and to secure its property for the benefit of the New York Central and Hudson River Railroad Company ; that the latter, in order to carry such plan into effect, purchased a large number of the second mortgage bonds and also a majority of the stock of that company ; that by virtue of its ownership of a majority of such stock and preparatory to the foreclosure of the mortgage, it obtained and assumed control of the affairs of the New York and Northern Railway Company by causing changes in its directory and officers so as to make them favorable to the New York Central and Hudson River Railroad Company, thereby preventing the New York and Northern Railway Company from saving its default in payment of the interest then due and from taking measures for its safety, or from resisting the New York Central and Hudson River Railroad Company's scheme to acquire its property by such foreclosure ; that the railroad of the New York and Northern Railway Company was a parallel and competing road with the New York Central and Hudson River railroad, and that by the means already referred to the latter company sought to secure the property of the former through such foreclosure for its own benefit and at a price much less than its true value ; that this was rendered possible by its acquiring a majority of the stock of that

company, and thereby being able to control the affairs of the New York and Northern Railway Company, and to so manage its business in collusion with its directors and officers that its obligations could not be met or its default made good; that such acts on the part of the New York Central and Hudson River Railroad Company were fraudulent and prohibited by the laws of the state; and that the written request to the plaintiff asking for a foreclosure did not comply with the terms and provisions of the mortgage, as the persons making the request were not at the time holders of two millions of the bonds it was given to secure.

On the trial the defendants introduced in evidence the following letters and papers:

"The New York Central and Hudson River R. R. Co. Principal Office. Albany, N. Y., March 18th, 1893. Circular letter to the stockholders in respect of acquiring control of the New York and Northern Railway. The New York and Northern Railway extends from One Hundred and Fifty-fifth street, in the city of New York, occupying a line practically midway between this company's Hudson river division and its Harlem division to Brewsters, on the line of the latter, a distance of about 60 miles. It has a fine bridge across the Harlem river, and has, within the bounds of the city of New York, 8 miles of a hundred-foot roadway, and it owns 32 acres of terminal property, also within the bounds of the city. The relation and value of this line to this company is too well known to require explanation. To acquire the control of it will cost this company about $4,000,000, *and agreements in respect thereof have been entered into subject to the approval herein asked for.* It is proposed, after the control is acquired, to enter into a lease with the present company, or perhaps with a company to be organized in its stead, under which this company will guarantee the principal and interest of $5,000,000 in 4 per cent 100-year gold bonds. Of this amount $4,000,000 will represent *the cost of control,* as above stated, and $1,000,000 will be reserved for developing, improving and bettering the line. As will be seen by the form of notice at

the top hereof, a special meeting of the stockholders of this company has been called, to be held on the 19th day of April next, to which meeting this matter will be submitted for approval and authorization. Accompanying this is the form of a proxy to be used at that meeting, which, when executed, may be returned to the undersigned in the same envelope with the proxies for other meetings which are sent herewith. What has been said in the other circular letters which go out with this in respect of the desirability of a full vote, may be taken to apply, with equal force, to this present letter. E. D. Worcester, Secretary."

" New York, April 3, 1893. Drexel, Morgan & Company.

"E. V. W. Rossiter, Esq., Treasurer New York Central and Hudson River Railroad Company, Grand Central Depot, New York. Dear Sir : We have paid *out for the New York Central* as follows :

| | |
|---|---:|
| $1,700,000 second mortgage bonds, at 80........ | $1,360,000 |
| 2,500,000 preferred stock, at 35 .............. | 875,000 |
| 2,200,000 common stock, at 15................ | 330,000 |
| Total ............................ ..... | $2,565,000 |

" Will you kindly send us your note dated April 1st for that amount, and oblige, Yours truly, Drexel, Morgan & Company.

" P. S. Equipment obligations and floating debt obligations have not yet been delivered. We will report later as to them. D., M. & Co."

"New York, April 1, 1893. $2,565,000. On demand, upon ten days' notice after date, we promise to pay to the order of Drexel, Morgan & Company, Two Million Five Hundred and Sixty-five thousand dollars, with interest. Value received. New York Central and Hudson River Railroad Company, Chauncey M. Depew, President. E. V. W. Rossiter, Treasurer." The indorsements were : August 1st, 1893. Interest paid to date. Also $740,996 on account of principal of within. Also further indorsements of full payment, August 1st, 1893, for $1,804,094.89.

" New York, April 5, 1893.   E. V. W. Rossiter, Esq.,
Treas'r N. Y. C. & H. R. R. R. Co., City.   Dear Sir : *In pay-
ment for* the following securities of the N. Y. & Northern
R. R. Co., viz. : $1,700,000 2d Mtge. Bonds, $2,500,000 pre-
ferred stock, $2,200,000 Common stock, we have received
from you a Demand Note, on ten days' notice, for $2,565,000,
dated April 1st, 1893, and signed by Chauncey M. Depew,
President, and E. V. W. Rossiter, Treasurer of the N. Y.
Central & H. R. R. R. Co.   We hold the above-mentioned
securities *subject to your order.*   Yours, very truly, Drexel,
Morgan & Co."

The following is a resolution of the stockholders of the
New York Central and Hudson River Railroad Company,
which was adopted at a stockholders' meeting held April 19,
1893 : " Resolved, That the stockholders of the New York
Central and Hudson River Railroad Company hereby approve
and authorize the acquirement by *purchase of a controlling
interest* in the stock and bonds of the New York and
Northern Railway Company, and approve and authorize the
making of a lease with the Company, or a company which
shall be organized in its stead, of its railroad and property,
and approve and authorize the guarantee under such lease of
the principal and interest of $5,000,000 in four per cent one
hundred year gold bonds of the lessor company."

The report of the New York Central and Hudson River
Railroad Company to its stockholders, made June 4, 1893, was
as follows : " At a special meeting held April 19, 1893, 640,378
shares of the capital stock of this company were voted in favor
of a resolution approving and authorizing the acquirement *by
purchase of a controlling interest in the stock and bonds* of
the New York and Northern Railway Company, and approving
and authorizing the making of a lease with that company (or
a company which shall be organized in its stead) of its railroad
property ; and approving and authorizing the guarantee under
such lease of the principal and interest of $5,000,000 in 4 per
cent one hundred year gold bonds of the lessor company."

The following note was also introduced in evidence :

"August 1st, 1893.  $1,824,094.  On demand upon ten days' notice after date we promise to pay to the order of Drexel, Morgan & Company One Million eight hundred and twenty-four thousand and ninety-four dollars, with interest. Value received.  New York Central and Hudson River Railroad Company.  Chauncey M. Depew, President; E. V. W. Rossiter, Treasurer."  The indorsements upon this note showed payments in full, commencing August 2, 1893, and ending August ninth.

A contract between Louis V. Bell and Henry K. McHarg was also introduced in evidence, which shows that on the fourteenth of July, 1893, the New York Central and Hudson River Railroad Company agreed to purchase from them, at the price or rate of eighty cents on the dollar, second mortgage bonds of the New York and Northern Railway Company of the par value of at least seven hundred and fifty thousand dollars, to be paid for at that rate in the bonds of the company, which should, at the time of their issue, be the owner of the railroad covered by such mortgage, and a part of an issue of $6,200,000, bearing interest at the rate of four per cent per annum, payable one hundred years from the date of the new bonds, and secured by a mortgage upon said mortgaged property, principal and interest to be guaranteed by the New York Central and Hudson River Railroad Company; the purchase money to bear interest at four per cent from July 13, 1893, to be paid either by making the new bonds draw interest from that date, or by delivering to them bonds of the five million issue, the par value of which should be equal to the interest from July thirteenth; the New York Central and Hudson River Railroad Company to have the option to pay the purchase price in cash.  The contract also provided that the bonds purchased might be used by Messrs. Drexel, Morgan & Company for the purpose of reorganizing the New York and Northern Railway Company.

The president of the New York Central and Hudson River Railroad Company gave the following testimony: "I was

53

aware of the notice sent by Drexel, Morgan & Company to the Farmers' Loan and Trust Company, and I acquiesced in having it sent. It *was sent in pursuance of the general purpose expressed in our circular of March* 18, 1893, and our statement of June 30, 1893, to our stockholders to acquire control by lease or otherwise of the New York and Northern Railroad property."

The evidence also disclosed that, in October, 1893, the minority stockholders gave notice to the New York Central and Hudson River Railroad Company, Drexel, Morgan & Company and Charles T. Barney that they were willing to contribute their proportion of the money necessary to pay or purchase the interest coupons for the non-payment of which such foreclosure was being had, and asked them to contribute their proportion for a like purpose. To this the New York Central and Hudson River Railroad Company made no reply. Barney replied that the stock standing in his name was owned by some one else, while Drexel, Morgan & Company declined to act upon that proposition.

That the New York and Northern Railway Company and the New York Central and Hudson River Railroad Company were duly organized, and that the plaintiff was a domestic corporation were found as facts by the court. It also in substance found that the New York Central and Hudson River Railroad Company owns and operates railroads which are parallel or competing lines with the New York and Northern railway; that the appellant Pick owned a hundred shares of the capital stock of the New York and Northern Railway Company, and represented about eighteen thousand other shares of such capital stock and the defendant Holmes owned twelve hundred shares, and that the purchase of the bonds by the New York Central and Hudson River Railroad Company was after default had been made in the payment of the interest thereon.

The court also found that the plaintiff had received a written request, signed by the holders of more than $2,000,000 in amount of such bonds, requesting it to bring an action for the

foreclosure and sale of the premises covered by such mortgage; that it was for the best interests of all concerned that all the property should be sold in one parcel, and a sale in any other way would be greatly to the detriment and injury of the parties interested in the railroad and its affairs; and that the rights of all the parties interested could be fully protected only by a sale of the mortgaged premises, property and appurtenances as an entirety.

As conclusions of law the court held that there was due under said mortgage for principal and interest the sum of $3,453,511.11, and that the plaintiff was entitled to a judgment of foreclosure and sale.

*James C. Carter* and *Simon Sterne* for appellants. The defense pleaded in the answer was a valid one, and, if proved, should have defeated the foreclosure of the mortgage on the Northern Company's railway. The Central Company had no right to purchase the stock of the Northern Company with a hostile intent toward that corporation. (Perry on Trusts, §§ 166, 428–435; *Draper* v. *Gordon*, 4 Sandf. Ch. 210; *Slade* v. *Van Vechten*, 11 Paige, 21; *Quackenbush* v. *Leonard*, 9 Paige, 334; Lewin on Trusts [8th ed.], 275–280; *Jackson* v. *Ludeling*, 21 Wall. 616; *Wright* v. *O. G., etc., M. Co.*, 40 Cal. 20; *Ervin* v. *O. R. & N. Co.*, 27 Fed. Rep. 625; *Taylor* v. *C. R. Co.*, L. R. [2 Exch.] 379; *Meeker* v. *W. I. Co.*, 17 Fed. Rep. 48; Cook on Stockholders, § 622; Morawetz on Corp. § 529; Beach on Private Corp. § 70; 2 Bigelow on Frauds, 645; *Pearson* v. *C. R. R. Co.*, 13 Am. & Eng. R. Cases, 94, 102; *Van Horne* v. *Fonda*, 5 Johns. Ch. 388; *Swinburne* v. *Swinburne*, 28 N. Y. 573.) It was error for the trial court to decline to consider undisputed testimony and to refuse to make the findings of fact requested by appellants, although such court admitted in many instances, by the very form of its refusal to find "as being immaterial and a mere recitation of testimony," that the facts requested by appellants to be found had really been established. These erroneous refusals to find, and the additional error in actually making findings

unsupported by any evidence whatever, furnish all-sufficient and numerous grounds for the reversal of the judgment appealed from. (*Callanan* v. *Gilman*, 107 N. Y. 360; *Baldwin* v. *Doying*, 114 N. Y. 452.) The trial court erred in excluding evidence submitted by appellants in proof of the allegations of their defense, its errors in this respect being largely due to its erroneous views as to the validity of such defense, which caused it to regard evidence in support thereof as immaterial and irrelevant. The numerous exceptions to such rulings of the court are well taken. (Baylies on Code Pleading, 784; *Hubbard* v. *Gorham*, 38 Hun, 162; *Walter* v. *Fowler*, 85 N. Y. 621; 2 Perry on Trusts, § 760; 1 Rice on Ev. 511, 512, 615; *McGrath* v. *Bell*, 42 How. Pr. 182; *Van Buren* v. *Wells*, 19 Wend. 204.) The plaintiff had no authority or right to bring this foreclosure suit, it not having received a valid request so to do from a sufficient number of bondholders as contemplated by the mortgage. It was error for the court to refuse so to find. And it was likewise error to refuse to dismiss the complaint on this ground at the close of plaintiff's case. (*C. D., etc., R. R. Co.* v. *Fosdick*, 106 U. S. 47.)

*Ashbel Greene, David McClure* and *Thomas Thacher* for respondents. The respondents claim that the answer is only on behalf of the company, and is to be considered precisely as if served by the corporation; that the intervenors, as individual stockholders, could not have defended, and that it follows that the defendants are bound by the corporate acts and admissions of the railway company, and proofs conclusive against the company are conclusive against Pick and Holmes in the present suit. (*Hyatt* v. *Allen*, 56 N. Y. 553; *Burrall* v. *B. R. R. Co.*, 75 N. Y. 216; *Jermain* v. *L. S. & M. S. R. Co.*, 91 N. Y. 492; *Davenport* v. *Dows*, 18 Wall. 626; *Humphreys* v. *McKissock*, 140 U. S. 304; *Porter* v. *Sabin*, 149 U. S. 473; *P. C. Co.* v. *M. P. Co.*, 115 U. S. 587; *Morgan* v. *R. R. Co.*, 1 Woods, 15; *Sala* v. *City of N. O.*, 2 Woods, 196; *Forbes* v. *M. R. Co.*, 2 Woods, 323;

*Porter* v. *P. B. S. Co.*, 120 U. S. 670; *McMullen* v. *Ritchie*, 64 Fed. Rep. 253.) The plaintiff's case entitled it to judgment. (Laws of 1892, chap. 688, § 5; *Muller* v. *Dows*, 94 U. S. 449; *Hammock* v. *L. & T. Co.*, 105 U. S. 77; *Columbia Co.* v. *K. R. Co.*, 60 Fed. Rep. 799; *M. R. R. Co.* v. *Parker*, 9 Ga. 377.) No request to foreclose is required by the mortgage. (*Hollister* v. *Stewart*, 111 N. Y. 644; *Shaw* v. *R. R. Co.* 100 U. S. 612; *M. C. Co.* v. *T. R.*, 137 U. S. 171; *G. T. & S. D. Co.* v. *G. C. S. & M. R. R. Co.*, 139 U. S. 137.) The trustee was requested to foreclose by the holders of $2,000,000 of bonds. (*Bowling* v. *Harrison*, 6 How. [U. S.] 248; *Smedes* v. *Bank of Utica*, 20 Johns. 372.) The appellants cannot make out a defense by combining facts proved with facts which they claim to have been erroneously prevented from proving. (Code Civ. Proc. § 522.) Upon the facts proved, no defense was made out based upon the appellants' theory of a trust with respect to the use of the bonds, because the bonds and a majority of the stock were held together. (*B. C. Co.* v. *Hulmes*, 157 Penn. St. 278; *Mickles* v. *R. C. Bank*, 11 Paige, 118; *Pratt* v. *Bacon*, 10 Pick. 123; *Russell* v. *McLellan*, 14 Pick. 63; *Abbott* v. *Merriam*, 8 Cush. 591; *Gillett* v. *Bowen*, 23 Fed. Rep. 625; *Gamble* v. *Q. C. W. Co.*, 123 N. Y. 91; *Harpending* v. *Munson*, 91 N. Y. 652; *Leavenworth Co. Comrs.* v. *C., R. I. & P. R. Co.*, 134 U. S. 688; *C. T. Co.* v. *Bridges*, 57 Fed. Rep. 767; *F. C. Co.* v. *Fitzgerald*, 137 U. S. 110.) Upon the facts proved, no defense was made out upon the theory that the purpose with which the Central bought bonds prevented their enforcement of the mortgage. (*Morris* v. *Tuthill*, 72 N. Y. 575; *Phelps* v. *Nowlen*, 72 N. Y. 39; *C. B. Co.* v. *Paige*, 83 N. Y. 188; *Ramsey* v. *E. R. Co.*, 8 Abb. Pr. [N. S.] 174; *Ervin* v. *O. R. & N. Co.*, 20 Fed. Rep. 579; *Clinton* v. *Myers*, 46 N. Y. 515; *Oglesby* v. *Attrill*, 105 U. S. 605; *Simpson* v. *Dall*, 3 Wall. 476; *Adler* v. *Fenton*, 24 How. [U. S.] 407.) Upon the facts proved, which are referred to under the last two points, no defense was made out upon any combination of the grounds therein referred to. (*Beveridge* v. *N. Y. E. R. R.*

*Co.*, 112 N. Y. 1.) Upon the facts proved, no defense was made out upon any theory of combination or conspiracy. (*Ambler* v. *Choteau*, 107 U. S. 591 ; *Kent* v. *L. S. C. Co.*, 144 U. S. 91.) No defense was made out as based upon a diversion of earnings causing default. (*Day* v. *O. & L. C. R. R. Co.*, 107 N. Y. 129 ; *Thomas* v. *N. Y. & G. L. R. Co.*, 139 N. Y. 163 ; *Parsons* v. *Hayes*, 18 J. & S. 29 ; *Mann* v. *Currie*, 2 Barb. 294 ; *In re S., C. & N. Y. R. R. Co.*, 91 N. Y. 1 ; *Dimpfell* v. *O. & M. R. Co.*, 110 U. S. 210 ; *Beveridge* v. *N. Y. E. R. R. Co.*, 112 N. Y. 1 ; *Leslie* v. *Lorillard*, 110 N. Y. 519 ; *P. C. Co.* v. *M. P. Co.*, 115 U. S. 587 ; *Porter* v. *P. B. S. Co.*, 120 U. S. 670 ; *Allen* v. *Wilson*, 28 Fed. Rep. 678.) The question whether the Central had power to buy the bonds and stock of the Northern is wholly irrelevant. But it clearly had the power. (Laws of 1887, chap. 616, §§ 4, 15, 18, 19, 46, 48 ; *H. & G. M. Co.* v. *H. & W. M. Co.*, 127 N. Y. 252 ; *S. L. Co.* v. *North*, 4 Johns. Ch. 270 ; *S. N. Co.* v. *Weed*, 17 Barb. 378 ; *Humbert* v. *Trinity Church*, 24 Wend. 630 ; *Bogardus* v. *Trinity Church*, 4 Sandf. Ch. 758.) There is nothing in the point made that failure to demur or object to the answer permitted the introduction of immaterial evidence. (Code Civ. Proc. § 499 ; *Corning* v. *Corning*, 6 N. Y. 97 ; *Braman* v. *Bingham*, 26 N. Y. 483, 490 ; *Bronner* v. *Frauenthal*, 37 N. Y. 166.) There was no error committed in the exclusion of evidence offered in support of the defense. (*Howard* v. *C. F. Ins. Co.*, 4 Den. 502.) The appellants do not particularize the precise exceptions to refusals to find upon which they rely, but make a summing up of what they state are the facts proven beyond dispute, and seek to throw upon respondents' counsel and the court the task of seeing whether perchance some fact or other which would possibly have been found has escaped the notice of the trial judge or of opposing counsel. This course of procedure has received no countenance from this court. (*Quincey* v. *Young*, 53 N. Y. 507 ; *Callanan* v. *Gilman*, 107 N. Y. 372 ; *Stewart* v. *Morss*, 79 N. Y. 629 ; *Baldwin* v. *Doying*, 114 N. Y. 452 ; *Glacius* v. *Black*, 50 N. Y. 147 ; *Quincey* v. *White*, 63 N. Y. 370, 381.)

MARTIN, J.   That the New York Central and Hudson River Railroad Company purchased a majority of the second-mortgage bonds and a majority of the stock of the New York and Northern Railway Company for the sole purpose of obtaining control of the property of the latter, is clearly established by the proof contained in the record.   Indeed, such was the avowed purpose of its purchase.   The record renders it equally clear that the New York Central and Hudson River Railroad Company was the actual and beneficial owner of such bonds and stock for several months before the commencement of this action.   They were retained in the hands of Drexel, Morgan & Company, not as owners or holders in their own right, but as agents or naked trustees for the New York Central and Hudson River Railroad, and were clearly subject to the order and control of the latter.   Moreover, the request that Drexel, Morgan & Company made to the plaintiff to commence this action was not only based upon the bonds owned by the New York Central and Hudson River Railroad Company and others it had contracted to purchase, but the sole purpose of that request was to procure a foreclosure and thus enable the New York Central and Hudson River Railroad Company to acquire control of the property and franchises of the New York and Northern Railway Company for its own benefit, as set forth in the circular letter sent to the stockholders of the New York Central and Hudson River Railroad Company.   The president of the latter company himself testified that that was the object and purpose which induced the sending of the notice requesting the commencement of this action.   The notice given by the New York Central and Hudson River Railroad Company to its stockholders states the fact that on March 18, 1893, agreements had already been made in respect to the purchase of a controlling interest in the New York and Northern Railway Company, subject to the approval therein asked for.   The letter of Drexel, Morgan & Company to the treasurer of the New York Central and Hudson River Railroad Company, dated April 5, 1893, shows that the majority of the stock and bonds mentioned therein was held by them, subject to the order of the

New York Central and Hudson River Railroad Company, and that they had received the note of that company in payment therefor. Thus, it is obvious that this action was procured to be commenced by the New York Central and Hudson River Railroad Company, while it owned a majority of the stock and bonds of the New York and Northern Railway Company, for the sole and avowed purpose of obtaining control of its property and business, regardless of the rights of the minority stockholders or the owners of the remainder of the bonds. The appellants contend that the New York Central and Hudson River Railroad Company, as such majority stockholder, also acquired the entire control of the affairs of the New York and Northern Railway Company through its board of directors, who were willing to serve the interests of those owning a majority of the stock, as was indicated by the resignation of three of the directors, the appointment of others in their places, by the resignation of two officers who occupied important positions in the affairs of that company, and by the appointment of two officers in their places who were in the employ of the New York Central and Hudson River Railroad Company to discharge the duties of such officers, and compensated for their services by the New York Central and Hudson River Railroad Company. While the proof upon that question was not perhaps conclusive, yet, the circumstances developed by the evidence plainly indicate that after it became the owner of a majority of the stock and bonds, the New York Central and Hudson River Railroad Company dictated and governed the action of the board of directors and controlled the management of the affairs of the New York and Northern Railway Company.

The facts already referred to are strong proof that the New York Central and Hudson River Railroad Company was in the control of the affairs of the New York and Northern Railway Company. It is hardly to be supposed that a board of directors who was not under the control of another corporation would appoint three of the friends of the president of that corporation as directors of the company, and place the officers

of that company in control of its financial affairs, especially when it was the owner of competing lines of railroad. The clear and legitimate inference to be drawn from the circumstances proved in this case is that after the New York Central and Hudson River Railroad Company purchased a majority of the stock and bonds of the New York and Northern Railway Company, it controlled its officers and directors as fully and completely as though they had been elected by its votes. All the facts and circumstances, so far as the defendants were permitted to prove them, tend to show that such was the situation. Indeed, it is a matter of common knowledge that where the ownership of a majority of the stock of such a corporation changes, the board usually changes, unless its members are already in harmony with the policy of the purchasers.

On the trial the appellants sought to prove that after the New York Central and Hudson River Railroad Company became the owner of such stock and bonds, and while its officers were in substantial control of the New York and Northern Railway Company, they declined to accept traffic from other roads that would have produced a fund with which to pay the interest due on the bonds in question; that the income of the road which should have been employed to pay such interest was used for other and improper purposes; and that such action caused the inability of the New York and Northern Railway Company to pay the interest and thus cure its default. This evidence was rejected as immaterial, and the appellants duly excepted.

In determining the correctness of the rulings made by the trial court, it becomes necessary to determine incidentally whether a corporation, purchasing a majority of the stock of another competing corporation, may thus obtain control of its affairs, cause it to divert the income from its business, or to refuse business which would enable it to pay the interest for which it was in default, and then institute an action in equity to enforce its obligations for the purpose of obtaining control of its property at less than its value to the injury of the

54

minority stockholders, and they have no remedy.  Or, in other words, whether a court of equity, with those facts established, would lend its aid to such a stockholder by enforcing the mortgage and decreeing a foreclosure and sale of the mortgaged premises, at its request, in its behalf, and to accomplish such a purpose.  If it would, then the rulings of the trial court were proper; if not, then the appellants were entitled to prove those facts, and it was error to reject the evidence.

In *Gamble* v. *Q. C. W. Co.* (123 N. Y. 91), in discussing a. similar question, Judge PECKHAM, in effect, said that, although it is not every question of mere administration or of policy upon which there might be a difference of opinion that would justify the minority in coming into a court of equity to obtain relief, yet, where the action of a majority of the stockholders of a corporation is fraudulent or oppressive to the minority shareholders, an action may be maintained by the latter, where the contemplated action of the majority is so far opposed to the interests of the corporation as to lead to a clear inference that such action is with an intent to serve some outside purpose, regardless of the consequences to the company and inconsistent with its interests.

In *Pondir* v. *New York, L. E. & W. R. R. Co.* (72 Hun, 385, 389), where the Erie Railroad Company, through the action of the Buffalo, Bradford and Pittsburgh Railroad Company, whose directors were elected and controlled by the Erie Company, without consideration, obtained the property of the latter corporation and so arranged its affairs as to render all the shares of its stock, other than those held by the Erie Company, valueless, it was held that a stockholder of the Buffalo, Bradford and Pittsburgh Railroad Company might maintain an action to redress the wrong done to his company. In that case Mr. Justice FOLLETT said : " This was a fraud on the Buffalo, Bradford and Pittsburgh Railroad Company and its shareholders.  Such frauds are not uncommon in the management of corporations, and when they are exposed should be condemned by the courts and a heavy hand laid upon all who participate in them."

In *Barr* v. *N. Y., L. E. & W. R. R. Co.* (96 N. Y. 444) where the officers of another corporation had leased the property of the first corporation, controlled a majority of its stock, and conspired to compel the minority to sell its stock by refusing to pay the rent due, it was held that a court of equity, on the application of the minority, would compel the payment of the rent, and that where the majority of the stockholders of a corporation are illegally pursuing a course which is in violation of the rights of the other stockholders, an action to obtain equitable relief may be maintained by an aggrieved stockholder.

*Sage* v. *Culver* (147 N. Y. 241) is to the effect that when it can be fairly gathered that the officers and directors of a corporation have made use of relations of trust and confidence to secure or promote some selfish interest, it is enough to set a court of equity in motion, and to require them to explain such a transaction which there is a presumption against in equity.

In *Meyer* v. *Staten Island R'way Co.* (7 N. Y. St. Repr. 245) it was held that a majority of the stockholders of a corporation would not be permitted to sanction a transaction which is the outcome of a scheme, dishonest or fraudulent in its inception, and that the minority stockholders have rights which under such circumstances must be recognized; that the majority may legally control the company's business, but in assuming such control they take upon themselves the correlative duty of diligence and good faith, and that they cannot manipulate the company's business in their own interests to the injury of the minority stockholders.

In *Ervin* v. *Oregon Ry. & Nav. Co.* (27 Fed. R. 630) it was held that when a number of stockholders combine to constitute themselves a majority, to control the corporation as they see fit, they become, for all practical purposes, the corporation itself, and assume the trust relation of the corporation towards its stockholders, and, if they seek to make profit out of it at the expense of those whose rights are the same as their own, they are unfaithful to the relation they have

assumed, and guilty, at least, of constructive fraud which a court of equity will remedy.

In *Wright* v. *Oroville M. Co.* (40 Cal. 20) it was in substance held that in dealing with the relations between a corporation and its officers on one hand, and the stockholders upon the other, in the management of the corporate affairs, courts of equity will look beyond the mere observance of the forms of law, and inquire if the authority has been in good faith exercised to promote the interests of the stockholders; and that a court of equity will, at the instance of a stockholder, control the corporation and its officers, and restrain them from doing acts even within the scope of the corporate authority, if such acts would amount to a breach of the trust upon which the authority had been conferred.

In *Meeker* v. *Winthrop Iron Co.* (17 Fed. R. 48) it was held that a majority of the holders of the capital stock of a corporation could not, by their votes in a stockholders' meeting, lawfully authorize its officers to lease its property to themselves, or to another corporation formed for the purpose and exclusively owned by them, unless such lease was made in good faith, and supported by an adequate consideration; and that in a suit, properly prosecuted, to set aside such a contract, the burden of proof, showing fairness and adequacy, is upon the party or parties claiming thereunder.

In *Goodin* v. *Cincinnati and Whitewater Canal Co.* (18 Ohio St. 169) a railroad company purchased a majority of the shares of stock in a canal company, elected for the latter a board of directors who were in the interest of the railroad company, and then, with the assent of such board, appropriated the entire canal and property of the canal company as a railroad track, paying therefor a price or compensation which was agreed upon by the directors of the two companies, but which was far below the actual value of the property. Under those circumstances the court held that, although the stockholders and creditors of the canal company could not, after the road had been completed, reclaim the property, or enjoin its use, yet they were not concluded by such agree-

ment, as to the price of the property, but might compel the railroad company to account for its additional value.

In *Jackson* v. *Ludeling* (21 Wall. 616) it was held that the managers and officers of a company where capital is contributed in shares, are in a very legitimate sense trustees, alike for its stockholders and its creditors, though they may not be trustees technically and in form. They accordingly have no right to enter into or participate in any combination, the object of which is to divest the company of its property and obtain it for themselves at a sacrifice; they have no right to seek their own profit at the expense of the company, its stockholders, or even its bondholders. In case of embarrassment to the company, and any necessity to sell the estates of the company, it is their duty, to the extent of their power, to secure for all those whose interests are in their charge the highest possible price for the property which can be obtained.

In *Menier* v. *Hooper's Telegraph Works* (L. R. [9 Ch. App.] 350) it was held that where a majority of a company proposed to benefit themselves at the expense of the minority, the court might interfere to protect the minority, and that in such a case the bill is rightly filed by one shareholder on behalf of the others and against the company.

In *Gregory* v. *Patchett* (33 Beavan, 595), where the only available property of a company was transferred to two shareholders in lieu of their shares, and the company was thereby practically put to an end, and this was sanctioned by a majority of the shareholders at a general meeting, it was held that the majority could not bind the minority in such a transaction; that where measures were adopted which were plainly beyond the powers of the company, and inconsistent with the objects for which the company was constituted, the court, at the instance of the minority, would interpose to prevent the performance of such an act.

While the opinions in the cases cited are instructive and have an important bearing upon the question under consideration, still, within the limits of this opinion, we have found it impracticable to quote from the language of the courts in those cases.

" The law requires of the majority of the stockholders the utmost good faith in their control and management of the corporation as regards the minority, and in this respect the majority stand in much the same attitude towards the minority that the directors sustain towards all the stockholders. Thus, where the majority are interested in another corporation, and the two corporations have contracts between them, it is fraudulent for that majority to manage the affairs of the first corporation for the benefit of the second. A court of equity will intervene and protect the minority upon an application by the latter." (2 Cook on Stock and Stockholders [3d ed.], § 662, p. 945.) The same principle is stated in 1 Morawetz on Private Corporations (2d ed., § 529); 1 Beach on Private Corporations (§ 70); 2 Bigelow on Frauds (§ 645), and Beach on Mod. Eq. Juris. (§§ 132, 686).

*Hackettstown Nat. Bk.* v. *D. G. Yuengling Brewing Co.* (15 N. Y. Law Jour. 541) is to the effect that every delegation of power implies that it will be honestly exercised, and in that case it was held that the evidence offered upon the trial presented a question of fact for the jury whether a consent, given in pursuance of a resolution passed by a majority of the bondholders of a corporation, extending the time of payment of the principal and interest of its bonds, was given in good faith in the common interest of all, or amounted to an unwarranted exercise of the power of the majority because given in the interest of one bondholder, with a view of enabling him to compel the minority bondholders to sell their bonds on such terms as he might dictate.

While the question in some of the cases cited arose between stockholders and the directors and officers of a company who as such held a position of trust as to the former, still, where, as in this case, a majority of the stock is owned by a corporation or a combination of individuals, and it assumes the control of another company's business and affairs through its control of the officers and directors of the corporation, it would seem that for all practical purposes it becomes the corporation of which it holds a majority of stock, and assumes the

same trust relation towards the minority stockholders that a corporation itself usually bears to its stockholders, and, therefore, under such circumstances, the rule stated in the *Sage* and other similar cases applies to majority stockholders who control the affairs of the company, as well as to its directors or officers.

It is a controlling maxim that a court of equity will not aid parties in the perpetration or consummation of a fraud, nor give any assistance whereby either of the parties connected with the betrayal of a trust can derive any advantage therefrom. (*Farley* v. *St. Paul, Minneapolis & Manitoba Ry. Co.*, 4 McCrary, 138.)   "It is a sound principle, that he who prevents a thing being done shall not avail himself of the non-performance he has occasioned." (*Fleming* v. *Gilbert*, 3 Johns. 528, 531 ; *United States* v. *Peck*, 102 U. S. 64; *Dolan* v. *Rodgers*, 149 N. Y. 491.)

The principle of these authorities renders it quite obvious that a corporation, purchasing a majority of the stock of another competing one, cannot obtain control of its affairs, divert the income of its business, refuse business which would enable the defaulting company to pay its interest, and then institute an action in equity to enforce its obligations, for the avowed purpose of obtaining entire control of its property to the injury of the minority stockholders.   Such a course of action is clearly opposed to the true interests of the corporation itself, plainly discloses that one thus acting was not influenced by any honest desire to secure such interests, but that its action was to serve an outside purpose, regardless of consequences to the debtor company, and in a manner inconsistent with its interest and the interest of its minority stockholders.

The respondents, however, contend that the doctrine of the authorities cited is not controlling in this case, but that the New York Central and Hudson River Railroad Company had a right to purchase a majority of the stock and bonds of the New York and Northern Railway Company, for the express purpose of obtaining control of the affairs of the latter for its own use and benefit, and to thus acquire its property at less

than its actual value, to the injury of the minority stockholders, and that such stockholders had no remedy in law or in equity to protect themselves against such action of the majority stockholder, although it diverted the income which should have been applied to the payment of such interest to other and improper purposes, and refused business which would have enabled the defaulting company to pay its interest. In other words, the claim of the respondents is, and the General Term in effect held, that the purpose for which the New York Central and Hudson River Railroad Company obtained a majority of the stock and bonds of the New York and Northern Railway Company is entirely immaterial, and that notwithstanding the existence of such a purpose, a court of equity will aid them in enforcing the mortgage. To sustain this contention they cite *Morris* v. *Tuthill* (72 N. Y. 575); *Phelps* v. *Nowlen* (72 N. Y. 39); *Chenango Bridge Co.* v. *Paige* (83 N. Y. 178); *Ramsey* v. *Erie Railway Co.* (8 Abb. Pr. [N. S.] 174); *Clinton* v. *Myers* (46 N. Y. 511); *Simpson* v. *Dall* (3 Wall. 476); *Oglesby* v. *Attrill* (105 U. S. 605); *Adler* v. *Fenton* (24 How. [U. S.] 407), and *Beveridge* v. *N. Y. E. R. Co.* (112 N. Y. 1).

In *Morris* v. *Tuthill* the action was to foreclose a mortgage brought by an assignee. There was no question or principle of trust involved in that case. The plaintiff owed the defendant no duty, and, hence, it was held that under such circumstances the plaintiff had a right to maintain an action for the foreclosure of the mortgage, although he took title to it from motives of malice, and the assignor assigned the mortgage to him from a like motive. That that case was correctly decided we have no doubt, but it is clearly distinguishable in principle from the case at bar, and has no bearing whatever upon the question under consideration.

In the *Phelps* case it was held that a party was not liable for the consequences of an act done upon his own land, lawful in itself, which did not infringe upon any lawful right of another, simply because he was influenced in doing it by wrong and malicious motives, and that courts would not

inquire into the motives actuating a person in the enforce-
ment of a legal right. How the doctrine of that case is
applicable to the question involved in this, it is difficult to
perceive. In that case the party simply exercised a lawful
right, and the court held that no liability arose from his hav-
ing done so. There the plaintiff owed the defendant no duty
and sustained no relation of trust towards him, and, hence, it
is clearly distinguishable from the case at bar. The same may
be said of *Chenango Bridge Co.* v. *Paige, Ramsey* v. *Erie
Railway Co., Clinton* v. *Myers, Simpson* v. *Dall, Oglesby*
v. *Attrill* and *Adler* v. *Fenton.* We do not think these
cases in any way aid the respondents.

In the *Beveridge* case this court held that all the powers
conferred upon a corporation, unless otherwise expressly pre-
scribed, must be exercised by its directors, who are constituted
by law the agency for that purpose; that the consent or rati-
fication by its stockholders was unnecessary unless required
by statute or its by-laws, and, therefore, that contracts which
a corporation may legitimately make may be made by its board
of directors, and, in the absence of fraud or collusion on the part
of the directors, they are binding upon the corporation; that an
appeal to equity on the part of the stockholders to be relieved
from the acts of the directors, where they were within their
powers and apparently uninfluenced by corrupt motives or
personal interests adverse to those of the stockholders, should
at least be justified by some showing that the acts were
improper within the belief of a fair proportion of the stock-
holders. The principle enunciated and the decision made in
that case are undoubtedly correct. But the question as to the
right of a majority of the stockholders of a corporation to
enforce its obligations as against the minority stockholders to
their injury by reason of a default caused by the wrongful act
or omission of the majority, was not considered or in any way
involved. It, however, seems to recognize the principle that
where there is fraud or collusion, corrupt motives, or personal
interest adverse to the stockholders, another rule would apply.

55

As we have already seen, there are circumstances under which the majority stockholders occupy substantially the same relation of trust towards the minority as the board of directors would occupy towards the stockholders it represents, and, hence, where there are corrupt motives, personal interest or fraud, the case cited is an authority to sustain the conclusion which we have already reached.

That any person or corporation authorized to do so might have purchased the bonds of the New York and Northern Railway Company, and have rigorously enforced them by a sale of its property, there can be no doubt.   They might also have purchased the stock of the company and thus have become the owners of both; and while such owners might have enforced the liability of the company upon its bonds, so long as they acted in good faith and their purpose was proper; but when the New York Central and Hudson River Railroad Company purchased the stock and bonds in question, thus obtaining a controlling interest in the affairs of the New York and Northern Railway Company for the avowed purpose of destroying it, to serve a purpose entirely outside of that for which it was organized, and in hostility to it, it becomes clear that as such stockholder it owed a duty to the minority stockholders, that the law implied a *quasi* trust upon its part, and that a court of equity will not aid it in the destruction of that corporation and a confiscation of its property, although it held a majority of its stock and the required amount of its bonds.

Hence, we are of the opinion that the court erred in rejecting as immaterial evidence offered by the appellants to show that, after the New York Central and Hudson River Railroad Company became the owner of a majority of the stock and bonds of the New York and Northern Railway Company, and while its officers were in control of the latter corporation and its affairs, it declined to accept traffic from other roads which would have produced a fund with which to pay the interest that was due; that the income of the road, which should have been employed to pay such interest, was used for

other and improper purposes, and that such action upon the part of the majority stockholder occasioned the inability of the company to pay the interest and cure the default. To the rejection of this evidence the defendants excepted. We think many of these rulings were erroneous, and that the appellants had the right to make the proof offered, so far as it related to the transaction of the business of the New York and Northern Railway Company during the time the New York Central and Hudson River Railroad Company owned a majority of its stock and controlled its affairs, and for the error in those rulings the judgment should be reversed.

On the trial the learned trial judge refused to find various facts, upon the ground that they were immaterial. It is manifest from an examination of the appellants' requests to find, and the rulings of the court thereon, that it refused to find many facts that were material to sustain the appellants' defense, and which were established by the undisputed evidence in the case. This, we think, constituted error, as it is the duty of a trial judge to find upon every material question submitted to him and involved in the evidence. (*Callanan* v. *Gilman*, 107 N. Y. 360, 372.)

The respondents claim that by virtue of the provisions of section forty of the Stock Corporation Law the New York Central and Hudson River Railroad Company had the right to acquire the stock of the New York and Northern Railway Company. We do not deem it necessary to either discuss or decide that question, for if it be admitted that the New York Central and Hudson River Railroad Company was authorized to purchase such stock and bonds, still nothing will be found in the statute which authorizes it to employ them for the purpose of destroying the property of the New York and Northern Railway Company to the injury of its minority stockholders. If we are correct in our conclusion that a corporation cannot acquire the majority of the stock of another corporation, obtain control of its affairs, divert the income of its business, refuse business which would have enabled the defaulting company to pay its interest, and then institute an action

in equity to enforce its obligations against such company, with the avowed purpose of obtaining control of its property at less than its value to the injury of the minority stockholders, then it follows that this question is entirely immaterial. If the New York Central and Hudson River Railroad Company had a right to purchase the stock and bonds of the New York and Northern Railway Company, it obtained no better title and secured no greater right than any other stockholder would have acquired under a similar purchase. The right to purchase, even if given by statute, conferred upon the purchaser no authority to employ the stock and bonds for purposes condemned by the principles of equity.

The appellants also contend that the plaintiff had no authority or right to bring this action in the form in which it was brought, as it had not received a valid request to do so from a sufficient number of bondholders. The mortgage provides: "In the event of any of the defaults mentioned in the next preceding article, the party of the second part may, and upon the written request of the holders of $2,000,000 in amount of said bonds then outstanding and unpaid or unredeemed, the party of the second part shall apply to any court having proper jurisdiction in the premises for a foreclosure and sale of the mortgaged premises." The plaintiff, in its complaint, alleged that it had received a written request, signed by the holders of more than two millions in amount of said bonds outstanding and unpaid or unredeemed, requesting it to bring proceedings for the foreclosure and sale of the property and premises covered by this mortgage. The only request which was made to the trustee was that made by Drexel, Morgan & Company, who stated therein that they were the holders of $1,700,000, and represented the owners in $896,000 of such bonds. It was upon this request alone that the action was instituted. The proof tends to show that, although bonds to the amount of $1,700,000 were in their hands, yet that they were not in fact the owners of such bonds, but they belonged to the New York Central and Hudson River Railroad Company. The

proof also tends to show that the other bonds which they claimed to represent were not owned by Drexel, Morgan & Company, but were bonds which the New York Central and Hudson River Railroad Company had made a contract to purchase. Thus we have a request for foreclosure by a firm who in fact was not the owner of any portion of the bonds upon which the request was based. It is true that $1,700,000 of the bonds were in their possession, but it clearly appears from the evidence they had been purchased and paid for by the New York Central and Hudson River Railroad Company, and were held by them subject to its order. It is also true that the contract with the New York Central and Hudson River Railroad Company for the purchase of the other bonds referred to in such request contained a provision that they might be used by Drexel, Morgan & Company for the purpose of reorganizing the New York and Northern Railway Company. Without any lengthy discussion of this question it would seem that the purpose of this provision in the mortgage was to prevent the trustee from being compelled to foreclose the mortgage except upon the request of the owners of $2,000,000 in amount of the bonds. If such was its purpose, and such is a proper construction of that provision of the mortgage, then manifestly the request was insufficient, as it was not thus made.

It is, however, contended that inasmuch as the plaintiff had the right of its own motion or in its discretion to commence this action without any request whatever, it follows that the action, having been commenced, was properly begun and the appellants' contention cannot be sustained. The mortgage provides for two cases, in either of which the action might be properly commenced. The trustee might act upon its own motion and exercise its own judgment and discretion upon the question whether it was for the interest of the bondholders and all concerned to have the mortgage foreclosed, and if it so determined it might institute an action for its foreclosure although no request whatever was made. On the other hand, it might be required to institute such an action upon the writ-

ten request of the owners of $2,000,000 of the bonds, notwithstanding the fact that it might be opposed to such a course and it was contrary to its judgment. One provision is permissive only while the other is mandatory. It does not necessarily follow because the plaintiff might have instituted this action in the exercise of its discretion, but was induced to bring it, relying upon a request that was invalid, that it may now be upheld upon the ground that it possessed a discretion which it never exercised. The action was brought upon the theory that the holders of $2,000,000 of the bonds had made a proper written request upon the plaintiff to commence it. Such having been the original character of the action, as indicated by the complaint, can it now be said that, although no proper request was made, yet the action may be maintained because the plaintiff might, in its discretion, have determined to bring the action although there had been no request. It would seem that under the provision of the mortgage permitting the plaintiff to bring this action, to some extent at least, the question whether or not it would foreclose the mortgage and declare the whole amount due was one of judgment and discretion to be exercised by it before the commencement of the action. Not having voluntarily sought to thus enforce the obligations of the company, but having had served upon it a request which purported to be signed by the holders of $2,000,000 of the bonds, and having commenced the action in pursuance of that request, we regard it as at least doubtful if it can now be maintained upon the ground that it was voluntarily commenced by the plaintiff if the request was invalid. But it is perhaps unnecessary to determine that question.

There are several other questions raised by the appellants, but, as the judgment must be reversed for the errors already pointed out, it is unnecessary to discuss or determine them.

This consideration of the questions involved in the case has led us to the conclusions that the learned trial judge erred: 1. In refusing to find material facts upon the ground that they were immaterial;

2. In declining to find other facts which were material and established by the uncontradicted evidence :

3. In rejecting, as immaterial, evidence offered by the appellants tending to show that the New York Central and Hudson River Railroad Company, while in control of the affairs of the New York and Northern Railway Company, declined to accept traffic from other roads which would have produced a fund with which to pay the interest due upon the bonds in suit ; and,

4. In rejecting, as immaterial, evidence to show that the income of the road, which should have been employed to pay the interest on such bonds, was used for other and improper purposes.

We think the judgment should be reversed, and a new trial granted, with costs to abide the event.

All concur, except ANDREWS, Ch. J., and GRAY, J., not voting.

Judgment reversed.