(38 Misc. Rep. 3.)

### McLEARY v. ERIE TELEGRAPH & TELEPHONE CO. et al.

(Supreme Court, Special Term, New York County. May, 1902.)

CORPORATIONS—INJUNCTION—RESTRAINING MAJORITY.

A domestic telegraph company acquired a controlling interest in the stock of a foreign telegraph company, and took a lease of its lines, promising to pay the stockholders of the latter a sum quarterly equal to $2 per annum on every share of its capital. After transfers of their franchises and of this controlling stock through several other companies, it came to the hands of a succeeding corporation, which proposed to vote such controlling stock on a proposition to rescind the agreement, and escape payment of the 2 per cent. dividend, claiming that it was not bound by the agreement theretofore entered into. *Held* that, on a suit of a minority stockholder, the action would be restrained, because detrimental to the interests of the company, creating a belief that the majority stockholders were opposed to the interests of the corporation as well as those of the minority stockholders, and because such action amounted to a fraud against such minority stockholders.

Application of M. King McLeary for injunction against the Erie Telegraph & Telephone Company and others.    Motion granted.

Le Barbier & Parker (Chas. E. Le Barbier, of counsel), for plaintiff.

Melville Egleston, for defendant American Telephone & Telegraph Co.

BLANCHARD, J.    This is an application by the plaintiff, a minority stockholder of the Postal Telegraph Cable Company of Texas, for an injunction pendente lite to restrain the defendants from voting on the controlling stock of that company at a meeting of stockholders called for March 18, 1902.    The following facts appear from plaintiff's papers submitted on this application:    The Postal Telegraph Cable Company of Texas is a corporation organized and existing under the laws of the state of Texas, having an authorized capital stock of $2,000,000, of which $1,200,000 has been issued.    The plaintiff is the owner of $100,000 of this stock.    By an agreement between this Texas company and the Postal Telegraph Cable Company of New York, the Texas company was granted certain exclusive rights within the state of Texas and adjoining states.    The defendant the Erie Telegraph & Telephone Company is a New York corporation, and prior to May 15, 1900, acquired 10,656 shares of the 12,000 shares outstanding; that being a controlling interest in the stock of the Postal Telegraph Cable Company of Texas.    On May 15, 1900, an agreement was entered into between the Erie Company and the Postal Company of Texas, whereby the Erie Company leased the lines and property of the Postal Company of Texas, and agreed to pay the interest on all bonds of the Postal Company of Texas, and all sums required for the sinking fund, and also "a sum of money equal to $2 per annum on every share of the present capital stock of the Postal Company, and on every share of every increase thereof made at the request of the Erie Company under and in pursuance of the terms of this indenture, to be paid to the shareholders of the Postal Company in four equal quarterly installments, of fifty cents per share, on the first days of January, April, July, and October during the said term; the first payment being made on the first day of October, 1900.    The Postal Company covenants and agrees that the sums of money paid by the Erie Company as above provided shall be appropriated and used solely for the purpose designated, respectively."    The franchises and property of the Erie Company were subsequently, and prior to the commencement of this action, sold for a certain sum of money to the defendant, the Occidental Telephone & Telegraph Company, and that company thus acquired the controlling interest in the Postal Company of Texas. The Occidental Company thereafter, in its turn, disposed of all its assets to the defendant the Western Telephone & Telegraph Company, and it is alleged that the majority of the stock of this company is owned by the defendant the American Telephone & Telegraph Company, and that thus this latter company acquired the control of the Postal Company of Texas, and of its rights and obligations.    It is further alleged that the president of the American Company is the president of the

Western Company, and that six of the directors of the American Company are likewise directors of the Western Company, and constitute a majority of the board of that company, which is composed of 11 members. It is claimed by the plaintiff that the Occidental Company is a mere dummy company, and was used simply as an intermediary to vest the property of the Erie Company in the Western Company. It appears from plaintiff's papers that the Western Company expressly guarantied the payment of the interest on the bonds of the Postal Company of Texas, and of the sinking-fund requirements, but has expressly provided that the Western Company did not assume the payment of 2 per cent. guarantied by the Erie Company on the stock of the Postal Company of Texas.

The plaintiff charges that, if the injunction is not granted, the American Company, through its control of the Western Company, will vote the 10,656 shares of stock of the Postal Company of Texas to rescind and annul the agreement between the Postal Company and the Erie Company, and the effect thereof will be to deprive the plaintiff, the holder of nearly all the minority stock of the Postal Company, of the 2 per cent. guaranty, and to deprive the Postal Company of the benefits derived by it under the agreement with the Erie Company.

The only defendant appearing in opposition to this application is the American Telephone & Telegraph Company, and that appears to be the only defendant of whom jurisdiction has been obtained for the purposes of this application. A single affidavit—that of the vice president of the American Company—is submitted in opposition to this application. The foregoing facts do not appear to be controverted or denied, except in the following respects: It is denied that the Western Company is "a branch or subcompany" of the American Company, as alleged by the plaintiff, but it is "an independent corporation, actively and largely engaged in business directly and indirectly through the medium of other corporations in several states; that the American * * * Company is a stockholder in the said Western * * * Company, but that there are besides more than 1,200 other stockholders in the said corporation, and that the said Western * * * Company is managed by its own board of directors in the interest of all its stockholders independently, and as a substantial and active business enterprise." It is further alleged in that affidavit that "the Western * * * Company did acquire a controlling interest in the capital stock of the Postal * * * Company of Texas, but that the last said stock was forthwith pledged to the Old Colony Trust Company, trustee, to secure an issue of bonds of the said Western * * * Company to the amount of $10,000,000, and that, pursuant to the powers and trusts in the indenture of pledge under which the said shares were deposited, a part thereof, constituting more than a majority and control of all the shares of the said Postal * * * Company of Texas, were transferred to nominees of the said trustee; that the American * * * Company did not and does not hold the voting power upon the said shares of the Postal * * * Company of Texas, nor was it ever, directly or indirectly, through its officers, agents, or attorneys, the holder of any shares whatever in the said Postal * * * Company of Texas." The affidavit further states

that the affiant is credibly informed that the meeting of the stockholders of the Postal Company of Texas occurred, and the stockholders duly rescinded the agreement with the Erie Company, in which action the American Company, or its officers, agents, or servants, took no part.

I am not satisfied from these denials that the Western Company is not under the control of the American Company. It will be observed that it is not denied that the majority of the stock of the Western Company is owned by the American Company. This may be the case, and the Western Company still have 1,200 other stockholders. It may also prove to be the case that the nominees of the Old Colony Trust Company, the depositary and trustee of the stock, were the selection of the American Company. In fact, they may be officers and directors of the American Company, who are also officers and directors of the Western Company. So far, therefore, as the facts as shown by the papers are concerned, I am disposed to grant the relief sought, if the law will permit it.

This is not the time for the consideration of the effect of the injunction, if it has been violated, nor whether the Western Company has violated the terms of the injunctive order after notice of it has been brought home to that company in another state. I do not pass upon these points; nor do I consider the affidavit of Mr. Langdon Hains, submitted by the plaintiff in connection with this, and to which the defendant objects. I pass, therefore, to the consideration of the law which I deem applicable to the facts as they are here recited.

It is urged by the defendant that:

"To warrant the interposition of the court in favor of the minority shareholders in a corporation or joint-stock association, as against the contemplated action of the majority, where such action is within the corporate powers, a case must be made out which plainly shows that such action is so far opposed to the true interests of the corporation itself as to lead to the clear inference that no one thus acting could have been influenced by any honest desire to secure such interests, but that he must have acted with an intent to subserve some outside purpose, regardless of the consequences to the company, and in a manner inconsistent with its interests."

That is the rule enunciated by Mr. Justice Peckham in the case of Gamble v. Water Co., 123 N. Y. 91, 99, 25 N. E. 201, 9 L. R. A. 527. It must not be overlooked that while a shareholder may ordinarily vote his stock in his own interest, and a majority stockholder may do likewise, still, as pointed out by the learned justice who wrote the opinion (page 98, 123 N. Y., page 202, 25 N. E., 9 L. R. A. 527), "their [the stockholders'] action resulting from such votes must not be so detrimental to the interests of the corporation itself as to lead to the necessary inference that the interests of the majority of the stockholders lie wholly outside of and in opposition to the interests of the corporation and of the minority of the shareholders, and that their action is a wanton or fraudulent destruction of the rights of such minority. In such cases," says the court, "it may be stated that the action of the majority of the shareholders may be subjected to the scrutiny of a court of equity at the suit of the minority shareholders." I am of the opinion that the contemplated action of the stockholders is within the rule as stated. No

explanation is vouchsafed to the court upon this application for the proposed action in canceling the agreement, whereby 2 per cent. is guarantied to the stockholders of the Postal Company of Texas by the Erie Company. The defendant now before the court, by a series of subsidiary companies directly or indirectly controlling the Postal Company of Texas, and in like manner owning nearly all of its stock, with the exception of that owned by the plaintiff, and virtually owning and controlling the Erie Company, which is the company liable to pay the 2 per cent. guarantied, has a direct and positive interest in the cancellation of the agreement, to wit; the saving of the 2 per cent. to the owners of the stock, other than that which it controls.

A point is made by defendant that no fraud is shown, but Judge Peckham clearly states (page 98, 123 N. Y., page 202, 25 N. E., 9 L. R. A. 527) what he understands by "fraud" in the sense that that term is used by him; i. e., action which is oppressive to the minority stockholders. I think the inference from the facts which stand uncontradicted upon this application is that the proposed action of the stockholders would work a fraud upon the plaintiff.

The recent case of Farmers' Loan & Trust Co. v. New York & N. R. Co., 150 N. Y. 410, 44 N. E. 1043, 34 L. R. A. 76, 55 Am. St. Rep. 689, and the cases therein cited in the opinion of Judge Martin, afford ample support to the conclusion I have reached. The motion is granted, with $10 costs to abide the event.

Motion granted, with $10 costs to abide event.